Randall Schwartz, Petitioner-Appellant,

Gayle J. Nelson, Petitioner,

v.

Wisconsin Department of Revenue and Wisconsin Tax Appeals Commission, Respondents-Respondents.

Court of Appeals

*No. 02–0372. Submitted on briefs August 8, 2002.—Decided September 11, 2002.*

2002 WI App 255

(Also reported in 653 N.W.2d 150.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Randall Schwartz* of Brookfield, and *Gayle J. Nelson* of Brookfield.

On behalf of the respondents-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Randall Schwartz ap-

peals from a circuit court order affirming a decision and order of the Wisconsin Tax Appeals Commission (the Commission).[1] The Commission determined that $112,278 of a $175,000 payment Schwartz received for the sale of his interest in Global Fastener & Supply, Inc. (Global), was taxable income paid in exchange for a covenant not to compete. The Commission further determined that the remainder of the payment was nontaxable income paid in exchange for a release of Schwartz's personal injury claims. On appeal, Schwartz contends that: (1) the Commission erred in failing to follow, or give sufficient weight to, the Internal Revenue Service's (IRS) acceptance of Schwartz's allocation of the $175,000 payment; (2) the Commission otherwise erred in allocating the taxable and nontaxable portions of the payment; and (3) the Commission improperly denied his request for a rehearing. We reject Schwartz's arguments. We affirm the circuit court order upholding the Commission's decision and order.

### FACTS

¶ 2. We take the relevant facts from the Commission's decision and order and from portions of the record made before the Commission. From 1985 until 1990, Schwartz was one of three shareholders of Global. Schwartz was also the principal salesperson for

---

[1] Schwartz's former spouse, Gayle J. Nelson, was a party to the administrative and circuit court proceedings in this case. Following the circuit court proceedings, Schwartz, acting pro se, signed and filed the notice of appeal in this case on his and on Gayle's behalf. Pursuant to *Jadair Inc. v. U.S. Fire Insurance Co.*, 209 Wis. 2d 187, 212–13, 562 N.W.2d 401 (1997), we previously held that Schwartz, as a nonattorney, was not authorized to file or sign the notice of appeal on Gayle's behalf. Consequently, we dismissed the appeal as to Gayle.

Global. In 1990, Schwartz came to believe that the other shareholders in Global, James Witt and Arthur Salani, were acting improperly and contrary to Global's best interests. As a result, Schwartz suffered anxiety and panic attacks. He continued to exhibit these symptoms for several years thereafter. Due to his condition, Schwartz was unable to work for Global from August 1990 until January 1991.

¶ 3. In January 1991, Schwartz, Witt, Salani and Global entered into a settlement and purchase agreement (Agreement) that was dated and effective as of September 15, 1990. Under the terms of the Agreement, Schwartz sold his interest in Global in exchange for $350,000. Global paid Schwartz $100,000 at the closing and executed a promissory note to Schwartz for the $250,000 balance. The Agreement provided that $175,000 of the $350,000 payment to Schwartz was allocated to his personal injury claims and his covenant not to compete. The Agreement provided as follows:

> The parties shall allocate, for tax purposes, $175,000 (including $100,000 paid in cash at Closing) in consideration of the release by [Schwartz] of the possible 'claim for personal injury (and, therefore, such allocated amount shall be excludable as income for tax purposes in accordance with Internal Revenue Code section 104(a)(2) and the other relevant Code sections and Treasury regulations) and for the covenant not to compete.[2]

As the above provision reveals, the Agreement did not specifically state how much of the $175,000 payment

---

[2] The covenant not to compete limited Schwartz's activity with regard to Global's past and current customers and within Global's sales territory until March 1, 1991.

was allocated for the release of Schwartz's personal injury claims and how much for his covenant not to compete.

¶ 4. The parties additionally executed a mutual release agreement and Salani and Witt also executed a directors' resolution, both of which addressed the $175,000 payment. Like the Agreement, neither of these documents specified how the payment was allocated between Schwartz's release of his personal injury claims and his covenant not to compete. Further, Global's own accounting books did not make any specific allocation regarding the payment.

¶ 5. All the parties to the Agreement honored their promises. Global satisfied the $250,000 note by payments to Schwartz of $8000 per month, consisting of $6139 in principal and $1861 in interest. Schwartz did not make any further claims against Global or Witt and Salani with regard to his personal injury claim, and he complied with the restrictions set out in the covenant not to compete.

¶ 6. On his 1991 Wisconsin income tax return, Schwartz attributed $10,000 of the $175,000 payment to the covenant not to compete and reported it as taxable income. He made this allocation based on his contention that the remainder of the payment represented compensation for his personal injury claims and that such payments are not taxable. He made a similar allocation on his 1991 federal income tax return.[3]

¶ 7. In October 1993, the IRS notified Schwartz that it was examining his 1991 federal income tax return. Specifically, the IRS advised Schwartz that

---

[3] The 1991 state and federal income tax returns were joint returns filed by Schwartz and his then wife. As we have noted, Schwartz's former wife is not a party to this appeal.

certain nonwage income he had reported might be subject to self-employment tax. The IRS asked Schwartz to provide additional information regarding this inquiry. Schwartz complied, and in November 1993, the IRS reported that its questions had been resolved and that Schwartz did not owe any further federal tax.

¶ 8. On April 4, 1994, the Wisconsin Department of Revenue (Department) issued an income tax assessment against Schwartz for 1989 through 1992. The largest adjustment was based on the Department's determination that all of the $175,000 payment should have been allocated to the covenant not to compete and therefore was fully taxable.

¶ 9. Schwartz filed a petition for redetermination with the Department objecting to the assessment. The Department rejected the petition and Schwartz, acting pro se, timely filed a petition for review with the Commission. At the scheduling conference, the Commission advised Schwartz that if he requested the Commission to issue subpoenas for any witnesses, it would do so. Later, Schwartz filed a list of his intended witnesses and documentary evidence in compliance with the scheduling order. At the hearing before the Commission, Schwartz defended his allocation of $10,000 of the $175,000 payment to his covenant not to compete.

¶ 10. In its decision and order, the Commission followed the approach taken in *Kreider v. Commissioner of Internal Revenue*, 762 F.2d 580 (7ᵗʰ Cir. 1985). There, like here, the parties' agreement failed to allocate a payment between a covenant not to compete and other items of compensation. The reviewing court nonetheless approved the tax court's approximation of the allocation so long as the payment was intended, in part,

to compensate for the covenant not to compete and the payment was economically reasonable. *See id.* at 588–89. Applying the *Kreider* test, the Commission held that "[p]ayments to Mr. Schwartz in exchange for the Release [of the personal injury claims] are exempt pursuant to section 104(a)(2) of the Internal Revenue Code." However, the Commission also held that "$112,278 of the $175,000 payment—all of which was received by Mr. Schwartz in 1991—is attributable to the covenant not to compete." The Commission's allocation was based on the amount of the payments that Schwartz had received pursuant to the agreement prior to March 1, 1991, the date the covenant not to compete expired. During this period of time, Schwartz had received $100,000 at the closing plus two months of principal payments pursuant to the promissory note for a total of $112,278. The Commission further calculated that the remaining amount, paid after March 1, 1991, was not attributable to the covenant not to compete and therefore was not taxable.

¶ 11. Schwartz petitioned for a rehearing under WIS. STAT. § 227.49 (1999–2000),[4] arguing that the Commission had failed to honor its promise to subpoena witnesses on his behalf. In support, Schwartz relied on his letter to the Commission listing his proposed witnesses. The Commission rejected Schwartz's rehearing request. The Commission held that Schwartz's letter was merely a listing of his intended witnesses and documentary evidence in compliance with the scheduling order, not a request that the Commission issue subpoenas for the listed witnesses.

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 12. Schwartz, now represented by counsel, filed a timely petition for circuit court review. In that forum, Schwartz argued that only $9000 of the $175,000 was taxable income attributable to the covenant not to compete. The circuit court rejected Schwartz's argument and upheld the Commission's determination concluding "the Commission came to the closest approximation possible that is economically reasonable."

¶ 13. Schwartz, again acting pro se, now appeals the circuit court's order.

## STANDARD OF REVIEW/BURDEN OF PROOF

¶ 14. On appeal, we review the decision of the agency—here, the Commission—not that of the circuit court. *Port Affiliates, Inc. v. DOR*, 190 Wis. 2d 271, 279, 526 N.W.2d 806 (Ct. App. 1994). Nonetheless, we value the circuit court's decision on the matter. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993). As to the standard of review, the Commission's findings of fact are governed by Wis. Stat. § 227.57(6): "If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact." However, we will set aside the agency's action if we find that it depends on any finding of fact that is not supported by substantial evidence in the record. *Id*. Substantial evidence is that degree of evidence which would allow a reasonable mind to reach the same conclusion as the agency. *Port Affiliates*, 190 Wis. 2d at 279.

██

¶ 15. As to the burden of proof, a tax assessment is presumed to be correct and the taxpayer has the

burden to demonstrate error in the assessment. *See Woller v. Dep't of Taxation*, 35 Wis. 2d 227, 232, 151 N.W.2d 170 (1967).

## DISCUSSION

### 1. Failure to Follow the IRS Determination

¶ 16. We first address Schwartz's argument that the Commission erred by failing to follow, or otherwise give proper weight to, the IRS's acceptance of his allocation of the $175,000 payment.

¶ 17. We begin by addressing the meager state of the record regarding this issue. The documentary record consists only of copies of two letters to Schwartz from the IRS. The first letter advised Schwartz that the IRS was examining his 1991 income tax return regarding some nonwage income that might be subject to self-employment tax. The letter asked Schwartz to provide certain information listed on the back of the letter. However, the copy of the letter that is in the record does not include the back of the letter. In the other letter, the IRS advises Schwartz that it has completed its review and "the questions have been resolved."

¶ 18. At the close of the hearing, the Commission set a briefing schedule. However, Schwartz failed to file a brief. The Department did file a brief, noting that Schwartz had failed to include the reverse side of the IRS's initial letter to him. The Department also noted that the IRS inquiry dealt with potential self-employment tax, not an income tax. This sparse record and Schwartz's failure to file a brief undoubtedly explain why the Commission's decision and order does not address this issue.

¶ 19. A similar situation exists with regard to the judicial review proceedings in the circuit court. Although the factual portion of Schwartz's brief to the circuit court alluded to the IRS inquiry, the legal portion of the brief never developed any argument regarding this matter. That undoubtedly explains why the circuit court's decision does not address this matter.

¶ 20. In summary, we do not have a Commission or circuit court ruling on the matter. As a result, we have nothing to review. On this threshold basis, we summarily affirm the circuit court order upholding the Commission's decision and order.

¶ 21. Alternatively, we also affirm on the merits for three reasons. First, the letters from the IRS do not establish that the IRS inquiry was related to the allocation of the $175,000 payment. Second, assuming the IRS inquiry addressed the allocation issue (as Schwartz contended in his testimony), the inquiry was made for purposes of determining Schwartz's self-employment tax, not for purposes of determining his income tax. Finally, even assuming that the IRS inquiry had income tax implications, we are not aware of any law, nor has Schwartz cited any, which requires the Commission to follow, or give sufficient weight to, determinations made by the IRS following an IRS inquiry or review.[5]

¶ 22. We therefore examine the appellate issue based on the Commission's rationale, separate and apart from the IRS inquiry.

---

[5] We also observe that the IRS letter was an inquiry, not an audit.

124

## 2. Deference Owed to the Commission

¶ 23. Although the parties' briefs do not address the degree of deference, if any, that we should accord the Commission's decision, we deem this an important threshold consideration, especially in light of the Commission's determination to adopt the decision in *Kreider*.

¶ 24. We accord great weight deference when the agency is charged by the legislature with the duty of administering a statute, the interpretation of the agency is one of long-standing, the agency employs its expertise or specialized knowledge in forming its interpretation, and the agency's interpretation will provide uniformity and consistency in the application of the statute. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).

¶ 25. We accord due weight deference when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. *Id*. at 286. Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency. *See id*. at 286–87.

██

¶ 26. Finally, we accord no deference when the legal conclusion reached by the agency is one of first impression or when the agency's position on the statute has been so inconsistent as to provide no real guidance. *Id*. at 285.

¶ 27. In this case, we do not employ the great weight deference standard. As our ensuing discussion will reveal, the Commission had not previously addressed how a payment should be allocated between a covenant not to compete and other claims when the agreement between the parties is silent on the matter. Nor has any published Wisconsin case law addressed this question. Thus, the Commission was plowing new ground in this case. It follows then that the Commission's ruling is not one of long-standing.

¶ 28. For the same reason, we decline to employ the due weight deference standard. While the Commission has substantial experience in the area of taxation, it has not previously developed expertise regarding the particular question posed by this case—the legal standard for allocating a payment between a claim for personal injury and a covenant not to compete when the parties' agreement is silent on the matter. Moreover, that question does not tap into the Commission's expertise in tax matters. Rather, the question smacks more of a legal determination than a tax determination—a matter the courts are equally, or perhaps better, equipped to answer.

¶ 29. In summary, the test adopted by the Commission in this case was one of first impression, and the question did not tap into the specialized tax expertise of the Commission. We therefore employ the no deference standard in this case, and we answer the question on a de novo basis.

### 3. Allocation of the Payment

¶ 30. The issue on appeal involves the Commission's determination that $112,278 of the $175,000 payment was attributable to the covenant not to compete and constituted taxable income.

¶ 31. In making its determination, the Commission looked to *Kreider*. There, the taxpayers appealed a decision of the United States Tax Court allocating a $631,383.80 payment made upon the sale of their trucking company. The issue on appeal was whether the payment was made in consideration of the taxpayers' stock in the company, a covenant not to compete or compensation for personal services. *Id*. at 581. As in this case, the sales agreement was "completely silent as to the method of allocation." *Id*. at 583. As a result, the Tax Court reviewed the record and determined that one-third of the payment was allocable to compensation for services while two-thirds was allocable to the covenant not to compete. *Id*.

¶ 32. The taxpayers challenged the Tax Court's decision arguing that the covenant not to compete lacked economic substance. *Id*. at 588. The *Kreider* court rejected this argument, concluding that "some allocation of the . . . payment both to Mr. Kreider's services and to the covenant not to compete was both intended and economically reasonable. In making the actual allocation, the [tax] court made the closest approximation it could since complete accuracy was impossible." *Id*. at 589.

¶ 33. We agree with the Commission and adopt *Kreider* as the law in Wisconsin. We hold that when an agreement is silent as to the allocation of a payment

between a covenant not to compete and other claims or compensation, the Commission may make a reasonable allocation so long as it is: (1) based upon credible evidence; (2) the parties intended a portion of the payment as compensation for the covenant not to compete; and (3) the payment is economically reasonable. Here, the Commission concluded that although the Agreement was silent as to the allocation of the $175,000 payment, the unambiguous language of the Agreement reflected the parties' intent that some portion of the $175,000 represented compensation for the release and some portion for the covenant not to compete. In determining the specific amount allocable to the covenant not to compete, the Commission turned to the evidence in the record.

¶ 34. The Commission concluded that it would be reasonable to allocate to the covenant not to compete the $112,278 paid to Schwartz under the Agreement prior to the expiration of the covenant on March 1, 1991. This amount consisted of the $100,000 payment made to Schwartz upon closing, plus two months of principal payments of $6139 pursuant to the promissory note.

¶ 35. In taking this approach, the Commission considered and expressly rejected Schwartz's contention that the amount allocable to the covenant not to compete should be based upon his monthly salary multiplied by the five and one-half month duration of the covenant not to compete. We agree with the Commission's reasoning that Schwartz's salary-based argument overlooks the particular value of his covenant not to compete under the facts of this case. The Commission found that in 1991, Global's gross income averaged more than $280,000 per month, producing a gross income of approximately 3.4 million dollars, and

an ordinary income after expenses of approximately $244,000.[6] Schwartz was Global's principal salesperson. The "noncompetiton" clause in the Agreement recognized the "great expense and effort" expended by Global in establishing its customer base and that Schwartz, "by virtue of employment with [Global], has had unique and extensive exposure to and personal contact with [Global's] customers." Given Global's monthly income, the Commission concluded that compensation for a covenant not to compete for a five-month period "could reasonably be pegged at $112,278." The evidence well supports the Commission determination that Schwartz's covenant not to compete would be of value in excess of Schwartz's salary over the duration of the covenant.

¶ 36. In summary, we uphold the Commission's selection of the *Kreider* test as the proper legal standard for allocating a payment between a covenant not to compete and other claims when the parties' agreement is silent on the matter of allocation. Under that test, we further uphold the Commission's determinations that the parties' intended a portion of the $175,000 as compensation for Schwartz's covenant not to compete and that the allocation of $112,278 to the covenant was economically reasonable.

---

[6] We note that Schwartz objects to the Commission's use of Global's 1991 income in its analysis as he was not working for Global during that time. However, Schwartz does not offer any evidence as to Global's income in prior years or how the Commission's reliance on 1991 income would materially alter the result.

### 4. Denial of Rehearing

██

¶ 37. Schwartz next argues that the Commission improperly denied his request for a rehearing. Schwartz's request was based on his contention that the Commission failed to subpoena two witnesses on his behalf. WISCONSIN STAT. § 227.49(3) provides that a petition for rehearing will be granted by the agency "only on the basis of" material error of law or fact, or the discovery of new evidence.

¶ 38. During the scheduling conference, the Commission informed Schwartz that it would compel the appearance of these witnesses if requested. Thereafter, Schwartz wrote a letter to the Commission listing his proposed witnesses and his proposed documentary evidence. The Commission construed his letter to be a list of his proposed witnesses and documentary evidence pursuant to the scheduling order. Schwartz contends that this letter required the Commission to subpoena the witnesses listed in the letter.

¶ 39. In denying Schwartz's rehearing request, the Commission stated, "Mr. Schwartz did not ask the Commission to provide him with a subpoena or even mention that word in the letter . . . . [I]f Mr. Schwartz intended this letter to constitute a request for subpoenas . . . he should have contacted the Commission when none were issued during the 39 days between the date of his letter and the date of trial." The Commission additionally noted Schwartz's representation that the witnesses would be "pleased" to testify on his behalf as an indication that the use of subpoenas was not indicated.

¶ 40. A petition for a rehearing pursuant to Wis. Stat. § 227.49 is addressed to the agency's discretion. *See Village of Prentice v. Transp. Comm'n of Wis.*, 123 Wis. 2d 113, 121, 365 N.W.2d 899 (Ct. App. 1985).[7] In this case, we deem the reasons given by the Commission for denying Schwartz's rehearing request to be reasonable and therefore a proper exercise of the Commission's discretion. On its face, Schwartz's letter was in response to, and in compliance with, the Commission's scheduling order, which required the parties to list their proposed witnesses and documentary evidence. In addition, the letter did not request the Commission to issue any subpoenas for the witnesses listed. Finally, Schwartz never complained prior to the hearing that the subpoenas had not been issued. And, while there was an exchange during the hearing between Schwartz and the presiding commissioner about the Commission's authority to issue subpoenas, this discussion did not concern the two witnesses who are

---

[7] In *Village of Prentice v. Transportation Commission of Wisconsin*, 123 Wis. 2d 113, 121, 365 N.W.2d 899 (Ct. App. 1985), the court of appeals addressed Wis. Stat. § 227.12(3) (1983–84), which currently is numbered Wis. Stat. § 227.49. Besides holding that a request for a rehearing is addressed to the agency's discretion, the court also held that the circuit court did not have jurisdiction to review a determination by the Transportation Commission of Wisconsin to conduct a rehearing because the order granting or denying a rehearing was not a "decision" eligible for judicial review within the meaning of Wis. Stat. § 227.15 (1983–84). *Village of Prentice*, 123 Wis. 2d at 121. However, that limitation (currently set out in Wis. Stat. § 227.52) does not apply to this case. Instead, the applicable statute is Wis. Stat. § 73.015(1) which permits judicial review of both decisions and *orders* of determinations made by the Tax Appeals Commission.

the focus of Schwartz's appeal. Instead, Schwartz waited until he received an adverse result from the Commission before complaining that the Commission had not subpoenaed the witnesses listed in his letter. We see no misuse of discretion in the Commission's rejection of Schwartz's rehearing request.

## CONCLUSION

¶ 41. As to the IRS inquiry, we hold that the record in this case does not establish that the IRS action was related to an inquiry regarding Schwartz's allocation of the $175,000 payment. Assuming that the inquiry was directed at the $175,000 payment, the inquiry concerned a potential self-employment tax, not a potential income tax assessment. Further assuming that the inquiry carried income tax consequences, the Commission was not required to abide by, or give sufficient weight to, the IRS's decision regarding Schwartz's allocation of the payment at issue.

¶ 42. In addition, we uphold the Commission's adoption of the *Kreider* "reasonable allocation" standard. Under that test, we further uphold the Commission's allocation of $112,278 to Schwartz's covenant not to compete as economically reasonable under the facts of this case.

¶ 43. Finally, we hold that the Commission did not err in the exercise of its discretion by rejecting Schwartz's request for a rehearing pursuant to Wis. Stat. § 227.49.

*By the Court.*—Order affirmed.