BRASH, J.
*919 ¶1 The Town of Holland (the "Town") appeals an order of the circuit court, as changed and modified by a supplemental order, regarding a decision of the Public Service Commission of Wisconsin ("PSC") relating to the construction of a high voltage transmission line in the La Crosse area. The circuit court affirmed the PSC's decision that the transmission line was necessary to provide an adequate supply of electricity to the La Crosse area. The circuit court further held, contrary to the Town's assertion, that the Environmental Impact Statement ("EIS") the PSC prepared was not legally insufficient.
¶2 However, the circuit court found that the PSC had not provided a rational basis for its determination that it was not practicable to utilize an existing transmission line for a seven-mile portion of the proposed new line located in the Town. The court therefore remanded the matter to the PSC for reevaluation of the siting of that seven-mile portion. The court initially enjoined the continuation of work on that contested portion, but subsequently stayed that injunction in its supplemental order pending the resolution of this appeal.
¶3 The Town also appeals the circuit court's determination that it did not have jurisdiction to review the PSC's order denying a petition for rehearing on its decision.
¶4 The PSC cross-appeals on whether the circuit court properly remanded the issue regarding the contested seven-mile portion, and whether the court erred in enjoining work in that specific area. The companies involved in the construction of the transmission line, which are intervenors in this matter, also cross-appeal on that issue: American Transmission Company LLC; Northern States Power Company; Dairyland Power Cooperative; WPPI Energy; SMMPA Wisconsin LLC; and ATC Management, Inc. (collectively the "Companies").[1]
¶5 We conclude that the PSC properly determined that construction of the new transmission line is necessary, and that the EIS prepared by the PSC was not legally insufficient. We therefore affirm the circuit court on those issues.
¶6 However, we find that the PSC did provide a rational basis for its determination relating to the contested seven-mile portion of the transmission line, and therefore we reverse the circuit court's order to remand that issue to the PSC. Consequently, we remand this matter to the circuit court to vacate the injunction.
¶7 Additionally, we determine that the PSC's order denying the petition for rehearing is judicially reviewable, contrary *920 to the circuit court's determination that it did not have jurisdiction to review that order. We therefore reviewed the denial order by the PSC, and hold that the PSC properly denied the petition for rehearing.
BACKGROUND
¶8 In October 2013, the Companies applied to the PSC for a Certificate of Public Convenience and Necessity ("CPCN") to construct and operate a 345 kilovolt high voltage transmission line known as the Badger Coulee Project.[2] The purpose of the Project is to improve the reliability of electrical power for the City of La Crosse and its surrounding area, extending to Winona, Minnesota. Substantial portions of the Project are located in the Town.
¶9 The Town, among others, was opposed to the Project, and intervened in the proceedings with the PSC. The Town asserted that the Project was not necessary because transmission lines had recently been constructed in the same general area, and additional lines were not warranted due to slow growth projections for that area. The Town also cited concerns relating to potential health impacts from the new transmission lines, as well as the condemnation of private property for transmission line easements. The Town further contended that construction of the Project would adversely impact its land use plan. Due to this opposition, the proceedings surrounding the CPCN application were considered to be a Class 1 contested case, requiring the PSC to hold public hearings on the application and to provide the opposing parties with the opportunity to present and rebut evidence. See WIS. STAT. § 227.44 (2015-16).[3] See also WIS. STAT. §§ 227.01(3)(a) and 196.491(3)(b).
¶10 In the meantime, the PSC, upon receiving the CPCN application from the Companies, was statutorily required to prepare an EIS to determine the potential effects of the Project on the "quality of the human environment." See WIS. STAT. § 1.11(2)(c). A draft of the EIS for the Project as prepared by the PSC was published in August 2014; the PSC accepted comments on the draft EIS for forty-five days after its publication. The PSC reviewed the comments its received and incorporated additional information based on those comments. In November 2014 it released the finalized EIS, which contained over six hundred pages.
¶11 After the release of the EIS, the PSC held a hearing on the CPCN application over several days in January 2015. At that time, the intervening parties, who had pre-filed written briefs and exhibits, were permitted to present and rebut expert testimony. Prior to that, in December 2014, the PSC held a number of hearings regarding the Project, taking both oral and written testimony from the public. Public comments were also accepted on the PSC's website.
¶12 The PSC released its final decision on the matter on April 23, 2015. It found that "[a]pproval of the [P]roject is in the public interest and is required by the public convenience and necessity." Accordingly, the PSC issued the CPCN authorizing the Companies to commence construction of the Project.
¶13 Two petitions for rehearing and a request for clarification were filed in *921 May 2015. The rehearing petition at issue here was brought by Citizen's Energy Task Force, Inc. and Save Our Unique Lands of Wisconsin, Inc.[4] The petition asserted that there was newly-discovered evidence relating to growth trends that was not available at the time that the PSC made its decision. The PSC denied that petition.[5]
¶14 The Town subsequently filed a petition for judicial review of the PSC's decision. In that petition, the Town argued that the EIS was legally insufficient because it failed to "study, develop and describe" alternatives to the Project as statutorily required. See WIS. STAT. § 1.11(2)(e). The Town further asserted that the Project was "unreasonably in excess of probable future requirements" for energy use based on growth trends, and therefore is not necessary and not in the public interest. Additionally, the Town contended that the Project will "unreasonably interfere with the orderly land use and development plans" for the Town.
¶15 On review, the circuit court first addressed jurisdictional issues. It found that although it did have jurisdiction over the Town's petition for review of the PSC's final decision, it did not have jurisdiction to review the PSC's denial of the petition for rehearing. The court reasoned that the denial was a discretionary decision on the part of the PSC and thus was not reviewable, citing Village of Prentice v. Transportation Commission of Wisconsin , 123 Wis. 2d 113, 121, 365 N.W.2d 899 (Ct. App. 1985).
¶16 Next, the circuit court found that the PSC had "properly determined that [the] Badger[ ]Coulee Project ... was needed to provide an adequate supply of energy to the La Crosse area." However, the court pointed out that the EIS was not included in the record, and it therefore could not address its sufficiency. Thus, the matter was remanded to the PSC to rectify the incomplete record. The PSC subsequently supplemented the record by submitting the EIS, which the circuit court found to be legally sufficient, resolving that remanded issue.
¶17 The circuit court also remanded this matter for reevaluation of an issue relating to the use of an existing transmission line for a portion of the Project. That existing line is known as "CapX," and had been approved for the La Crosse area a few years earlier; it also runs through the Town. Use of the CapX line for this Project would require triple-circuiting to accommodate the overlap. The Town identified an eight-mile portion of the Project that it asserted could be located with the CapX line, and asserted that this would be the proper course of action under WIS. STAT. § 1.12(6), which requires electric transmission facilities to be sited in existing utility corridors "to the greatest extent feasible" before establishing new corridors. Id.
¶18 In its final decision, the PSC found that only one mile of the existing line could *922 be triple-circuited under standards set forth by the North American Electric Reliability Corporation (NERC), as opposed to the entire eight-mile portion proposed by the Town. However, the circuit court found that the PSC's determination was not supported by the NERC standards upon which it had relied. Without that support, the court found that the PSC had not established a rational basis for limiting the overlap with the existing transmission line to one mile. As a result, the court ordered the PSC "to reevaluate the siting of the Project through the seven-mile portion of the Project" that the Town proposed be sited with the CapX line.
¶19 Furthermore, the circuit court initially issued an injunction that precluded any work on that contested seven-mile portion from continuing until that issue was rectified by the PSC to the satisfaction of the court. However, the PSC moved for relief from that order, citing the excessive costs associated with delays in the completing the Project. The court then stayed the injunction, pending an appeal. This appeal follows.
DISCUSSION
I. Standard of Review and Level of Deference
¶20 As a threshold matter, we address the proper standard of review for this matter. Specifically, the parties dispute the level of deference to be afforded the PSC.
¶21 Judicial review of a decision by an administrative agency requires that this court review the decision of the agency, not the circuit court. Hill v. LIRC , 184 Wis. 2d 101, 109, 516 N.W.2d 441 (Ct. App. 1994). However, we affirm or reverse the order of the circuit court. See Richland Sch. Dist. v. DILHR , 166 Wis. 2d 262, 273, 479 N.W.2d 579 (Ct. App. 1991). Our scope of review is the same as that of the circuit court. See Hill , 184 Wis. 2d at 109, 516 N.W.2d 441.
¶22 In our review of an agency decision, the findings of fact determined by that agency are reviewed using the "substantial evidence" standard. Milwaukee Symphony Orchestra, Inc. v. DOR , 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674. Substantial evidence does not denote a preponderance of evidence; rather, the court determines, after considering all of the evidence in the record, whether "reasonable minds could arrive at the conclusion reached by the trier of fact." Id. "[T]he weight and credibility of the evidence are for the agency, not the reviewing court, to determine." Id. (citation omitted, brackets in Milwaukee Symphony ). To that end, the findings of fact "may be set aside only when a reasonable trier of fact could not have reached them from all the evidence before it, including the available inferences from that evidence." Id.
¶23 The application of those factual findings to the statute at issue presents a question of law that we review de novo . See ITW Deltar v. LIRC , 226 Wis. 2d 11, 16, 593 N.W.2d 908 (Ct. App. 1999). The courts may, however, defer to the agency's interpretation and application of the statute, applying one of the three levels of deference to the agency's decision: great weight deference, due weight deference, or no deference. Racine Harley-Davidson, Inc. v. DHA , 2006 WI 86, ¶12, 292 Wis. 2d 549, 717 N.W.2d 184.
¶24 Great weight deference is given when the following requirements are met:
(1) the agency is charged by the legislature with the duty of administering the statute; (2) the agency interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming its interpretation;
*923 and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute.
Id. , ¶16. Due weight deference is given when the agency "has some experience in an area but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute." Id. , ¶18. The agency is afforded no deference under any of the following circumstances: "(1) the issue is one of first impression; (2) the agency has no experience or expertise in deciding the legal issue presented; or (3) the agency's position on the issue has been so inconsistent as to provide no real guidance." Id. , ¶19.
¶25 The PSC and the Companies assert that the PSC should be afforded great weight deference for its decision related to its finding of necessity of the Project and issuing the CPCN.[6] The Town, on the other hand, contends that the PSC's determination of the question of necessity of the Project merits no deference.
¶26 In support of its argument, the Town cites MercyCare Insurance Co. v. Wisconsin Commissioner of Insurance , 2010 WI 87, 328 Wis. 2d 110, 786 N.W.2d 785. In MercyCare , this court certified an issue relating to the interpretation of an insurance contract; the proper level of deference to be afforded to the Insurance Commissioner was also in question. Id. , ¶1. The certification referenced Clean Wisconsin, Inc. v. Public Service Commission of Wisconsin , 2005 WI 93, 282 Wis. 2d 250, 700 N.W.2d 768, as an example of a case where the court gave "little or no attention" to whether an agency has established "long-standing" statutory interpretation in its discussion relating to deference to the agency. MercyCare Ins. Co. v. Wis. Comm'r of Ins. , No. 2008AP2937, 2009 WL 2781964 (Wis. Ct. App. Sept. 3, 2009). Our supreme court did not reference Clean Wisconsin in its decision on MercyCare , and the Town suggests that this lack of reference implies that we should not rely on the holding in Clean Wisconsin . However, we cannot read such inferences into supreme court decisions, and Clean Wisconsin remains good law to which we are bound. See Walberg v. St. Francis Home, Inc. , 2004 WI App 120, ¶7 n.4, 274 Wis. 2d 414, 683 N.W.2d 518 ("we are bound by supreme court precedent").
¶27 Thus, we rely on Clean Wisconsin for our analysis. Specifically, our supreme court determined in Clean Wisconsin that the PSC should be afforded great weight deference in matters relating to the application of chapter 196 of the Wisconsin Statutes, which includes the guidelines for determining whether there is a reasonable need for a proposed project. Clean Wis. , 282 Wis. 2d 250, ¶136, 700 N.W.2d 768 ; see also WIS. STAT. § 196.491(3). The court in Clean Wisconsin held that (1) the legislature had "specifically charged the PSC with the interpretation of chapter 196" granting the PSC "jurisdiction to 'supervise and regulate every public utility in this state and to do all things necessary and convenient to its jurisdiction' "; (2) the PSC "is the only agency charged with administering § 196.491(3)(d), which has been in existence for 30 years" and that "there can be no doubt the decision to issue a CPCN for a specific plant at a specific location calls for the PSC to utilize its expertise and make a variety of factual findings"; and (3) the interpretation and application of the statute "inherently calls for a variety of policy determinations" that the legislature has delegated to the PSC.
*924 Clean Wis. , 282 Wis. 2d 250, ¶¶136-39, 700 N.W.2d 768 (citation omitted).[7]
¶28 Therefore, we conclude that the PSC's application of WIS. STAT. § 196.491(3) in rendering its decision in this matter should be afforded great weight deference. Accordingly, our analysis will "focus on whether the PSC's determination had a rational basis ... and was consistent with the statutory language[.]" Clean Wis. , 282 Wis. 2d 250, ¶140, 700 N.W.2d 768.
II. Finding of Reasonable Need for the Project
¶29 With that deference in mind, we first address the Town's arguments that the Project is not "needed" according to the statutory guidelines.[8] As noted above, the criteria for the issuance of a CPCN is set forth at WIS. STAT. § 196.491(3). Specifically with regard to the need for a proposed project, the PSC must find that the project "satisfies the reasonable needs of the public for an adequate supply of electric energy" before a CPCN can be issued. Sec. 196.491(3)(d)2.
¶30 The Town argues that the PSC has already determined that there is an "adequate supply" of power in the area in which the Project is being constructed based on its previous approval of the CapX project. In its final decision for the CapX project, the PSC stated that the additional infrastructure of CapX was required in order for the power system in the La Crosse area to be adequately reliable.[9] The Town argues that based on the PSC's statement that CapX would provide an adequate supply of reliable power for the La Crosse area, it has no basis to find that this Project is needed.
¶31 However, the PSC's interpretation of the "reasonable needs of the public" is not limited to the existing infrastructure's ability to "keep the lights on," as argued by the Town. See WIS. STAT. § 196.491(3)(d)2. Rather, the PSC takes into account additional relevant factors in making its determination, such as increased reliability, economic benefits, and public policy considerations. In short, the PSC applies a broader definition of "reasonable needs," as opposed to the narrow interpretation advanced by the Town.
¶32 We find that the PSC's interpretation of "reasonable needs" comports with *925 the intent of WIS. STAT. § 196.491(3)(d). "The aim of statutory construction is to determine the legislature's intent." Fond Du Lac Cty. v. Town of Rosendale , 149 Wis. 2d 326, 332, 440 N.W.2d 818 (Ct. App. 1989). Under the plain language of the statute, the legislature's intent was to set forth guidelines upon which the PSC is to base its decision on whether to issue a CPCN. The legislature then "charged [the PSC] with administering § 196.491(3)(d)," with great weight deference to be afforded its application of the relevant facts of a matter to the statute. Clean Wis. , 282 Wis. 2d 250, ¶¶136-37, 700 N.W.2d 768. Indeed, the PSC's interpretation of "reasonable needs" includes policy determinations which the legislature has deemed to be the primary responsibility of the PSC. Id. , ¶¶135-36.
¶33 In making its determination in this case, the PSC prepared the EIS, and then heard testimony and reviewed evidence submitted by the Companies and other intervening parties. Ultimately, the PSC found that the Project would (1) increase reliability over and above the "critical load limit[s]" that result in low voltage power to the area, something the La Crosse area has experienced regularly since 2003; (2) provide economic benefits to customers based on numerous cost-estimate models that review load growth, natural gas prices, and other variables; and (3) allow for the development of alternative power sources, an important element of the state's energy policy.
¶34 We conclude that this constitutes a rational basis for the PSC's determination of reasonable need and is consistent with the statutory language of WIS. STAT. § 196.491(3)(d)2.See Clean Wis. , 282 Wis. 2d 250, ¶140, 700 N.W.2d 768. Therefore, we uphold the PSC's determination that there was a need for the Project.
III. Legal Sufficiency of the EIS
¶35 The Town also argues that the EIS prepared by the PSC was legally insufficient. Generally, the Town asserts that the EIS did not develop alternatives to the Project as required by the PSC's own rules, and that it adopted the view of the Companies regarding potential environmental impacts rather than performing an independent analysis.
¶36 As we previously noted, the PSC was statutorily required to prepare the EIS in conjunction with its review of the Companies' application for the CPCN. See WIS. STAT. § 1.11(2)(c). The statute compels agencies to address certain specific issues in an EIS including: the environmental impact of a project; unavoidable adverse environmental effects; any possible alternative to the project; the "relationship between local short-term uses of the human environment and the maintenance and enhancement of long-term productivity"; resources that would have to be committed to the project that are "irreversible and irretrievable"; and the benefits that would result from the project, both short-term and long-term, including any "economic advantages and disadvantages." Id.
¶37 This court's review of an EIS is "narrow." Clean Wis. , 282 Wis. 2d 250, ¶190, 700 N.W.2d 768. We do not evaluate the adequacy of an EIS; rather, we evaluate "whether the PSC's determination that the EIS was adequate was reasonable." Id. Again, we afford great weight deference to the PSC's determination of the adequacy of an EIS. Id. The Town bears the burden of showing that the PSC's determination of adequacy was lacking a rational basis. See id.
¶38 In addition to those basic principles for reviewing a challenge to an EIS, the court in Clean Wisconsin further noted:
*926 [W]e are also mindful that no matter how exhaustive the discussion of environmental impacts in a particular EIS might be, a challenger can always point to a potentiality that was not addressed. While reasonable alternatives are to be considered, every potentiality need not be evaluated, as the duty of an agency to prepare an EIS does not require it to engage in remote and speculative analysis. We must assess an EIS in light of the "rule of reason," which requires an EIS to furnish only such information as appears to be reasonably necessary under the circumstances for evaluation of the project rather than to be so all-encompassing in scope that the task of preparing it would become either fruitless or well nigh impossible.
Id. , ¶191 (internal citations, some quotation marks and brackets omitted).
¶39 As we previously noted, the EIS prepared by the PSC was over six hundred pages long. It provides detailed analyses of all of the environmental factors enumerated in WIS. STAT. § 1.11(2)(c), including potential impacts of the Project on wetlands, woodlands and waterways; animal species that would be affected; agricultural impacts; and impacts on residences located in close proximity to the Project. The EIS also analyzed several alternatives to the Project and their projected cost estimates for comparison. In short, the PSC determined that the EIS met the required statutory requirements and was thus legally sufficient. See id.
¶40 In applying great weight deference to our review of the PSC's determination that the EIS was sufficient, as well as being mindful that not every possible environmental impact and possible alternative needs to be addressed, we conclude that the PSC's determination was reasonable. See Clean Wis. , 282 Wis. 2d 250, ¶¶136, 190-91, 700 N.W.2d 768. The EIS is a thorough, detailed report, for which the PSC clearly applied its technical knowledge and utilized its expertise in analyzing information that was relevant to the Project. See id. , ¶139. Additionally, to the extent that the Town asserts that the PSC merely adopted the Companies' positions instead of doing an independent analysis, the PSC addressed this argument in its decision, noting that the "[i]ntervenors opposing the [P]roject offered only conjecture and did not analyze what they believe would be viable alternatives to the [P]roject. This speculation and lack of analysis does not stand up against the detailed and robust analysis performed by the [Companies]." We therefore affirm the PSC's determination that the EIS was legally sufficient.
IV. Siting of the Project with the CapX Line
¶41 As explained previously, the Town requested that an eight-mile portion of the Project be sited with the existing CapX transmission line. In support of its proposal, it cited WIS. STAT. § 1.12(6), which requires electric transmission facilities to be sited in existing utility corridors before establishing new corridors "to the greatest extent feasible[.]" Id. However, co-locating the lines would require that the existing CapX line be triple circuited, and the PSC in its final decision found that only one mile of the CapX line could be triple-circuited under standards set forth by NERC, as opposed to the entire eight-mile portion requested by the Town.
¶42 The circuit court in its review found that the PSC had not established a rational basis for this decision because it failed to demonstrate that triple-circuiting the entire eight-mile portion violated applicable NERC standards. As a result, the court remanded this issue to the PSC for further evaluation. The PSC and the Companies filed cross-appeals on this issue, *927 asserting that the siting determination by the PSC was proper based on the applicable statutory guidelines, including NERC.
¶43 In its decision approving the one-mile triple-circuiting with CapX, the PSC noted that "the one-mile limitation is consistent with [NERC] reliability criteria and will avoid violations of NERC reliability planning criteria for contingencies involving multi-circuiting of transmission lines." The criteria are further explained in the EIS: any time transmission lines are co-located for more than one mile, the reliability of the lines must be demonstrated under a variety of conditions, such as planned maintenance or storm damage. To comply with that requirement, the Companies would be required to formulate a plan to interrupt service to customers and demonstrate that the co-located lines would maintain satisfactory reliability.
¶44 After analyzing possible ways to demonstrate reliability in a power outage pursuant to the NERC requirement, the Companies found that "the risks associated with loss of the triple-circuit line are unacceptable." In other words, the Companies concluded that because there is no satisfactory plan for interrupting service, the prudent decision was to limit the co-located lines to one mile, thereby circumventing the NERC requirement. The PSC agreed.
¶45 The circuit court interpreted this course of action as one of avoidance by the PSC and the Companies; the court stated that the PSC had not provided any evidence to support its contention that NERC would be violated by triple-circuiting the eight-mile portion, but rather had permitted the Companies to avoid the requirement of formulating a plan for power outages. In contrast, the PSC asserts that the reason it rejected the triple-circuiting proposal was that the study done by the Companies indicated that there was no way to formulate a plan that would ensure the reliability of a triple-circuited system being co-located for that large of an area.
¶46 We again refer to our supreme court's holding in Clean Wisconsin : that the PSC has been charged with administering WIS. STAT. § 196.491(3)(d) for over thirty years and, accordingly, that "there can be no doubt the decision to issue a CPCN for a specific plant at a specific location calls for the PSC to utilize its expertise" in making this determination. Clean Wis. , 282 Wis. 2d 250, ¶137, 700 N.W.2d 768 (emphasis added). Here, the PSC reviewed the studies submitted by the Companies and, utilizing its expertise, determined that co-location of the Project with the CapX line should be limited to one mile. We conclude that this is a rational basis on which to base its determination, and that it is consistent with the language of WIS. STAT. § 1.12(6) requiring the siting of transmission lines in existing utility corridors only "to the greatest extent feasible[.]" See also Clean Wis. , 282 Wis. 2d 250, ¶140, 700 N.W.2d 768. We therefore reverse the circuit court's order that remanded this issue to the PSC for reevaluation.
¶47 Additionally, the circuit court issued, and then stayed, an injunction that precluded any work on the contested seven-mile portion until that issue was rectified by the PSC. Our holding renders that injunction moot because it no longer has " 'any practical effect' " with the resolution of this issue. See City of Racine v. J-T Enter. of Am., Inc. , 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974) (citation omitted).
¶48 Furthermore, the injunction as issued by the circuit court was not valid, as it did not comply with statutory requirements. See WIS. STAT. § 196.43(1) - (2) (requiring notice to the PSC and other parties, as well as at least two sureties entered on behalf of the petitioner for which the sum is sufficient to cover any *928 damages that may be sustained by the opposing parties). Therefore, we reverse and remand to the circuit court for an order vacating the injunction.
V. Review of the PSC's Order Denying the Petition for Rehearing
¶49 The final issue we address is the Town's contention that the circuit court erred in its determination that the PSC's order denying the rehearing petition was not judicially reviewable. Whether the circuit court properly determined that it lacked jurisdiction over this issue is a question of law that we review de novo . See Gomez v. LIRC , 153 Wis. 2d 686, 689, 451 N.W.2d 475 (Ct. App. 1989).
¶50 In its petition for judicial review, the Town argues that the PSC erred in denying the petition for rehearing. The petition alleged that new evidence-studies anticipating low or negative growth in the area impacted by the Project-was available that had not been available prior to the PSC's decision. The circuit court found that it did not have jurisdiction to review the PSC's order denying the rehearing petition because it was a discretionary decision on the part of the PSC. The circuit court opined that the statutory guidelines set forth in WIS. STAT. § 227.52 allow only for "administrative decisions" to be reviewed, which the courts have defined as a decision that is "supported by a record and be based upon findings of fact and conclusions of law." Wisconsin's Envtl. Decade, Inc. v. PSC , 93 Wis. 2d 650, 658, 287 N.W.2d 737 (1980). Relying on Village of Prentice , the circuit court found that the PSC's denial of the rehearing petition-which was an order, not a decision-was not judicially reviewable, because the order was not based on any factual and legal findings or on the record.
¶51 In contrast, the Town cites this court's decision in Schwartz v. Wisconsin Department of Revenue , 2002 WI App 255, 258 Wis. 2d 112, 653 N.W.2d 150, where we reviewed the Wisconsin Tax Appeals Commission's denial of a petitioner's request for a rehearing. Id. , ¶37. The Town argues that our review of the rehearing denial in Schwartz is the same type of review that it is seeking here.
¶52 In Schwartz , this court distinguished that case from the Village of Prentice by noting that there is a statute that "permits judicial review of both decisions and orders " made by the Tax Appeals Commission. Schwartz , 258 Wis. 2d 112, ¶40 n.7, 653 N.W.2d 150. That distinguishing factor exists in the statutes relevant to this case as well: WIS. STAT. § 196.41 permits judicial review of orders and determinations by public utilities under chapter 227 of the Wisconsin Statutes.
¶53 Furthermore, the analysis set forth in the PSC's order regarding the rehearing petition is analogous to that of its decision in this matter. Specifically, in explaining its reasons for the denial, the PSC states that the petitioners "have failed to show that their new evidence is sufficiently strong to reverse or modify" the PSC's decision. That statement implies that the PSC accepted the alleged new evidence submitted with the rehearing petition, reviewed it in conjunction with the record that it had established in making its final decision, and formed a conclusion that it did not impact the decision. This process meets the definition of an administrative decision. See Wisconsin's Envtl. Decade , 93 Wis. 2d at 658, 287 N.W.2d 737.
¶54 Moreover, the PSC's own form contemplates judicial review of a denial for rehearing. In the notice of rights form attached to its final decision, the PSC states that "[i]f this ... is an order denying rehearing , a person aggrieved who wishes to appeal must seek judicial review rather than rehearing" because "[a] second *929 petition for rehearing is not permitted." (Emphasis added.) Therefore, we find that the PSC's order denying the petition for rehearing is subject to judicial review.
¶55 This holding reverses the finding of the circuit court. However, as our scope of review for the PSC's order is the same as that of the circuit court, we reviewed the issue here rather than remanding it to the circuit court. See Hill , 184 Wis. 2d at 109, 516 N.W.2d 441.
¶56 Under WIS. STAT. § 227.49(3), a rehearing will be granted only upon a showing that the agency decision contained a material error of law or fact, or upon the discovery of new evidence "sufficiently strong to reverse or modify the order, and which could not have been previously discovered by due diligence." Id. We apply the same standard of review to this decision, applying the "substantial evidence" standard to the PSC's findings of fact, see Milwaukee Symphony Orchestra, Inc. , 324 Wis. 2d 68, ¶31, 781 N.W.2d 674, and great weight deference to its conclusions of law, see Clean Wisconsin , 282 Wis. 2d 250, ¶136, 700 N.W.2d 768.
¶57 The petition for rehearing submitted new studies regarding flat or negative growth trends and decreases in electricity use both in Wisconsin and nationally that had not been available when the PSC was making its decision in this matter. The PSC analyzed the data and found that it did not negate its previous findings with regard to evidence specific to the La Crosse area relating to recent growth and projections for continued growth. It therefore deemed the new evidence not sufficiently strong to reverse or modify its decision, and denied the petition for rehearing. See WIS. STAT. § 227.49(3).
¶58 We conclude that the PSC, again utilizing its expertise in reviewing the new evidence, provided a rational basis for this order that is consistent with the language of WIS. STAT. § 227.49(3). See Clean Wis. , 282 Wis. 2d 250, ¶¶137, 140, 700 N.W.2d 768. We therefore affirm its denial of the petition for rehearing.
¶59 In sum, we agree with the PSC's decision regarding its determination of reasonable need for the Project and the legal sufficiency of the EIS, and therefore affirm the decision of the circuit court on those issues. However, we also agree with the PSC's determination that overlapping this Project with the CapX line must be limited to one mile, thus reversing the circuit court's remand of that issue to the PSC. As a result, we remand this matter to the circuit court with instructions to enter an order affirming the PSC and vacating the injunction it granted relating to construction in the seven-mile area involved in that issue.
¶60 We further affirm the circuit court's finding that it had jurisdiction to address the Town's petition for review on this case; however, we conclude that the PSC's order denying the petition for rehearing is also subject to judicial review. Upon our review of that issue, we conclude that the PSC properly denied the petition for rehearing. Accordingly, we reverse the circuit court's finding that it did not have jurisdiction to review that issue, and remand with instructions to enter an order affirming the PSC's denial of the rehearing petition.
¶61 No costs to any party.
By the Court. -Orders affirmed in part, reversed in part, and cause remanded with directions.

Midcontinent Independent System Operator, Inc. and the City of Onalaska are also intervenors in this matter, but did not join the PSC and the Companies in their cross-appeals.

The application was submitted to the PSC by American Transmission Company LLC and Northern States Power Company; after intervening in the matter, Dairyland Power Cooperative, WPPI Energy, and SMMPA Wisconsin LLC became co-applicants.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Although the Town is not included as a party to either petition for rehearing, we find that it has standing to appeal this issue because it has a personal interest in the rehearing petition: it was adversely affected by the denial of the rehearing petition and "judicial policy calls for protecting" its interests here. See Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, Inc. , 2011 WI 36, ¶5, 333 Wis. 2d 402, 797 N.W.2d 789.

The other petition for rehearing, which was brought by a group of affected landowners referred to as "the Segment A Petitioners," and the request for clarification, brought by an individual property owner affected by the Project, are not at issue in the appeal or cross-appeals here.

The parties agree that great weight deference is applicable to the issue of whether the EIS is legally sufficient.

We note an inconsistency regarding the standard of review in the circuit court's decision. The court recognized the application of great weight deference to the PSC in Clean Wisconsin and discussed it at length; the court also referenced great weight as the appropriate level of deference in its supplemental order. However, in its initial decision the court stated that it had accorded due weight deference in this matter. It appears that finding may have been stated inadvertently.

The Companies argue that the Town has waived its right to assert this "need" argument on appeal because it did not raise the issue to the PSC. Generally, a party must raise an issue before the administrative agency in order to preserve it for judicial review. Bunker v. LIRC , 2002 WI App 216, ¶15, 257 Wis. 2d 255, 650 N.W.2d 864. However, this issue was raised by other intervening parties, so the record before the PSC was developed on this issue. Furthermore, because the Town has jurisdiction over lands affected by the Project, it has the right to petition for judicial review regardless of whether it even participated in the agency proceedings. See Wis. Stat. § 196.491(3)(j). We will therefore review this issue.

Although the PSC's decision relating to the CapX project, issued May 30, 2012, is not included in the record before us, all of the parties in this matter referenced it. We therefore take judicial notice of it pursuant to Wis. Stat. § 902.01. See also Wisconsin Power & Light Co. v. City of Beloit , 215 Wis. 439, 444, 254 N.W. 119 (1934) (noting that the court may take judicial notice of the files of the PSC). The CapX decision can be viewed in its entirety on the PSC's website: http://apps.psc.wi.gov/pages/viewdoc.htm?docid=165332.