COURT OF APPEALS
DECISION
DATED AND FILED

May 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2230**

Cir. Ct. No. 2022CV1273

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

TOWN OF CHRISTIANA,

    PETITIONER-APPELLANT,

ROXANN ENGELSTAD AND CHRIS KLOPP,

    INTERVENORS-CO-APPELLANTS,

EDWARD LOVELL AND TARA VASBY,

    INTERVENORS,

  V.

PUBLIC SERVICE COMMISSION OF WISCONSIN,

    RESPONDENT-RESPONDENT,

KOSHKONONG SOLAR ENERGY CENTER LLC,

    INTERVENOR-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: DIANE SCHLIPPER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. This appeal concerns the application of Koshkonong Solar Energy Center ("Koshkonong") for a certificate of public convenience and necessity ("CPCN") pursuant to WIS. STAT. § 196.491(3) (2023-24) to construct a large solar electric generation facility.[1]  The Town of Christiana ("the Town"), Roxann Engelstad, and Chris Klopp (collectively, "the appellants") intervened in the administrative proceedings before the Public Service Commission of Wisconsin ("PSC"), and on appeal they challenge the PSC's final decision granting Koshkonong's application, which the circuit court affirmed.  The appellants raise five primary arguments: (1) Koshkonong's CPCN application was not for a "wholesale merchant plant" under § 196.491(1)(w) and, therefore, the PSC improperly applied the wholesale-merchant-plant exemptions in § 196.491(3)(d)2. and 3.; (2) the PSC violated the Wisconsin Environmental Policy Act; (3) the PSC violated Wisconsin's Energy Priorities Law; (4) the circuit court erred by not taking judicial notice of certain documents; and (5) the PSC was biased.  We reject the appellants' arguments and affirm.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

**BACKGROUND**

¶2    In April 2021, Koshkonong applied for a CPCN for the construction of a large solar electric generation facility ("the project" or the "proposed facility"). The project area is located on primarily agricultural land, partly in the Town of Christiana in Dane County, and consists of 6,384 acres, with 2,349 acres proposed as the "Primary Array" area that would host the facility. The major components of the project include "[photovoltaic] panels, inverters, collector circuits, a collector substation, and a Battery Energy Storage System."

¶3    Koshkonong's CPCN application stated, "Koshkonong Solar … is currently the entity anticipated to own and operate the Project." The application also contemplated the possibility that the project would be sold or assigned:

> Koshkonong Solar, provided it receives a CPCN from the [PSC], would directly or indirectly through its affiliates, construct and operate the Project by selling the power using long term power purchase agreements. Alternatively, Koshkonong Solar would sell or assign the Project, or a portion thereof, to a public utility or other qualified entity at any time before, during or after the Project is constructed….

¶4    The PSC issued a notice of proceeding and opened a docket to consider Koshkonong's CPCN application. We refer to the proceedings in this docket as "the CPCN proceedings."

¶5    Approximately 15 days after Koshkonong applied for a CPCN, in a separate docket before the PSC, Wisconsin Electric Power Company, Wisconsin Public Service Corporation, and Madison Gas and Electric Company (collectively, ("the Utilities") applied for a certificate of authority from the PSC under WIS. STAT. § 196.49(3)(b) to acquire the project, including "upon approval, the transfer

of the CPCN rights and obligations authorized in [the CPCN proceedings]," from Koshkonong. We refer to the proceedings in that docket as "the acquisition proceedings."

¶6 In the CPCN proceedings, the appellants (among others) intervened, and a contested case hearing was held before an administrative law judge (ALJ) pursuant to WIS. STAT. §§ 196.491(3)(b), 227.01(3)(a), and 227.44. Over the course of three days, the ALJ heard testimony from Koshkonong, the appellants and other intervenors, and the public. The PSC also accepted written public comments through its website and prepared an Environmental Assessment ("EA") to determine whether an Environmental Impact Statement ("EIS") was required under the Wisconsin Environmental Policy Act ("WEPA"). The PSC determined that an EIS was not required under WEPA because the project is unlikely to have a significant impact on the human environment.

¶7 The PSC issued a final decision granting Koshkonong's CPCN application. In its final decision, the PSC concluded that the proposed facility is a wholesale merchant plant. The PSC also, pursuant to the Energy Priorities Law, considered and rejected an alternative proposed by one of the intervenors, Rob Danielson, who is not a party in this appeal. We discuss the PSC's final decision in the CPCN proceedings in greater detail below.

¶8 Approximately one year after approving Koshkonong's CPCN application, the PSC issued a final decision in the acquisition proceedings, which granted the Utilities' application for a certificate of authority allowing them to acquire, construct, own, and operate the project, subject to various conditions.

¶9 Each appellant separately petitioned for judicial review of the PSC's final decision in the CPCN proceedings, and the circuit court consolidated their

cases. The Town moved the court to take judicial notice of documents from the acquisition proceedings, and the court took "judicial notice that the documents presented to the Court by [the Town] reside in [the acquisition] docket." The appellants also moved to consolidate the circuit court proceedings regarding the PSC's final decision in the CPCN docket with other circuit court proceedings challenging the PSC's final decision in the acquisition docket.[2] The court denied that motion.

¶10 The circuit court affirmed the PSC's final decision granting Koshkonong's CPCN application. The court stated:

> The petitioners' primary argument is that PSC erred because it defined the [project] as a "wholesale merchant plant" under [WIS. STAT.] § 196.491(1)(w). According to the petitioners, a utility has since purchased the [project], so PSC should never have treated it like a wholesale merchant plant. The Court can share these concerns over what is apparently a commonly-used loophole in Wisconsin's process for the approval of new power plants and, at the same time, the Court can also conclude PSC properly applied the plain statutory definition of a wholesale merchant plant. The Court can neither add words to a statute nor overturn PSC's correct interpretation of that statute. The petitioners' remaining … arguments are not persuasive.
>
> The Court must therefore affirm PSC's final decision.

This appeal follows.[3]

---

[2] Englestad argued that the cases need not be consolidated, but that the circuit court should consider them together pursuant to its "inherent case administration powers."

[3] After the parties submitted their briefs, Koshkonong moved to substitute the Utilities for Koshkonong pursuant to WIS. STAT. § 803.10(3), which states, "In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with

(continued)

## STANDARD OF REVIEW

¶11    This appeal is brought pursuant to WIS. STAT. § 227.58; accordingly, "we review the decision of the agency, not the circuit court." ***Sierra Club v. PSC***, 2024 WI App 52, ¶10, 413 Wis. 2d 616, 12 N.W.3d 854.

¶12    "When reviewing questions of law decided by an agency, including statutory interpretation, our review is de novo." ***DOR v. Microsoft Corp.***, 2019 WI App 62, ¶13, 389 Wis. 2d 350, 936 N.W.2d 160; *see also* WIS. STAT. § 227.57(11) ("Upon review of an agency action or decision, the court shall accord no deference to the agency's interpretation of law.").

¶13    In reviewing the PSC's decision, we accord "due weight" to "the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." WIS. STAT. § 227.57(10); *see also* ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶¶3, 78, 382 Wis. 2d 496, 914 N.W.2d 21. "If the agency's action depends on any fact found by the agency in a contested case proceeding," we will not "substitute [our] judgment for that of the agency as to the weight of the evidence on any disputed

---

the original party." Although § 803.10(3) permits the substitution of parties, it does not compel it, and Koshkonong does not cite any authority that requires substitution under these circumstances. In light of this, and considering that the PSC's final decision in the acquisition proceedings is still being litigated, we decline to substitute the Utilities for Koshkonong, and deny Koshkonong's motion.

    Separately, the briefs submitted by Koshkonong and the PSC do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

finding of fact." Sec. 227.57(6). However, we will "set aside [an] agency action or remand the case to the agency if [we] find[] that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." Sec. 227.57(6). "An agency's findings are supported by substantial evidence if a reasonable person could arrive at the same conclusion as the agency, taking into account all the evidence in the record." *Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶46, 282 Wis. 2d 250, 700 N.W.2d 768. "The burden in a [WIS. STAT.] ch. 227 review proceeding is on the party seeking to overturn the agency action, not on the agency to justify its action." *City of La Crosse v. DOR*, 120 Wis. 2d 168, 178, 353 N.W.2d 68 (Ct. App. 1984).

¶14 This appeal requires us to interpret various statutes. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).

## DISCUSSION

¶15 As stated, the appellants raise the following primary arguments: Koshkonong's CPCN application was not for a "wholesale merchant plant" under WIS. STAT. § 196.491(1)(w) and, therefore, the PSC improperly applied the wholesale-merchant-plant exemptions in § 196.491(3)(d)2. and 3.; the PSC did not comply with WEPA or Wisconsin's Energy Priorities Law when granting Koshkonong's CPCN application; the circuit court erred by not taking judicial notice of documents from the acquisition proceedings; and the PSC was biased

because it opened the docket for the acquisition proceedings while the CPCN proceedings were pending.[4] We reject the appellants' arguments for the reasons that follow.

> *I. In granting the CPCN to Koshkonong, the PSC properly considered the proposed facility to be a "wholesale merchant plant" under WIS. STAT. § 196.491(1)(w).*

¶16 The appellants argue that the PSC improperly granted the CPCN to Koshkonong because Koshkonong's application was not for a "wholesale merchant plant." This argument is not supported by the record or the law.

¶17 Before addressing the appellants' specific arguments on this issue, we clarify that our review is limited to the PSC's decision granting the CPCN to Koshkonong. Accordingly, we reject any arguments by the appellants directed at decisions by the PSC other than its decision granting Koshkonong the CPCN in the CPCN proceedings. Specifically, the appellants' arguments are largely premised on the contention that, in issuing the CPCN to Koshkonong and then granting the certificate of authority to transfer the project and CPCN to the Utilities, the PSC took advantage of a statutory loophole and violated WIS. STAT. § 196.491. However, as summarized above, the CPCN and acquisition proceedings were separate administrative proceedings, and the Utilities were not a party to the CPCN proceedings. Moreover, although the appellants moved to consolidate the circuit court proceedings challenging the PSC's final decisions in the CPCN proceedings and the acquisition proceedings, that motion was denied,

---

[4] The appellants make additional arguments, which we briefly address and reject in footnotes 8 and 23, *infra*, because they are either outside the scope of our review in this appeal or because they violate one or more appellate rules.

and the appellants do not challenge that denial on appeal. Here, we are reviewing only the PSC's decision to grant Koshkonong's application for a CPCN, not its decision in the acquisition proceedings. As a result, we do not address the appellants' arguments challenging the PSC's decision to grant a certificate of authority to the Utilities allowing them to acquire the project and CPCN.

¶18 Having clarified that the acquisition proceedings are not the subject of this appeal, we now address the appellants' specific arguments as to whether the PSC, in granting a CPCN to Koshkonong, properly considered the proposed facility to be a wholesale merchant plant, thereby entitling it to specified statutory exemptions. WISCONSIN STAT. § 196.491(3)(a)1. provides in pertinent part that "no person may commence the construction of a facility unless the person has applied for and received a certificate of public convenience and necessity." *See also* § 196.491(1)(e) ("'Facility' means a large electric generating facility or a high-voltage transmission line."). Section 196.491(3)(d) states that the PSC shall approve a CPCN application if the PSC makes certain determinations. However, some of these requirements do not apply when the proposed facility is a wholesale merchant plant. Specifically, for wholesale merchant plants, the PSC does not consider whether "[t]he proposed facility satisfies the reasonable needs of the public for an adequate supply of electric energy"; nor does it consider "alternative sources of supply or engineering or economic factors" when determining whether "[t]he design and location or route [are] in the public interest." Sec. 196.491(3)(d)2., 3.

¶19 WISCONSIN STAT. § 196.491(1)(w) defines "wholesale merchant plant" in relevant part:

> 1. "Wholesale merchant plant" means … electric generating equipment and associated facilities located in

this state that do not provide service to any retail customer and that are owned and operated by any of the following:

> a. Subject to the approval of the commission under sub. (3m)(a), an affiliated interest of a public utility.

> b. A person that is not a public utility.

A facility is thus not a "wholesale merchant plant" if it is owned and operated by a public utility. The parties do not dispute that the Utilities are public utilities and that Koshkonong is not.

¶20 Here, the PSC concluded that the proposed facility is a wholesale merchant plant. The PSC stated in its final decision:

> Certain intervenors argued that this project is not or should not be treated as a wholesale merchant facility because, at some point in the future the applicant may sell some or all of the project to a public utility. The Commission disagrees and finds that the applicant's project has been appropriately reviewed and considered by this Commission as a wholesale merchant plant. While there may be an acquisition of the solar facility in the future, as of the date of this Final Decision, there has been no sale. Therefore, it remains appropriate to evaluate the proposed project as a merchant plant. This is consistent with previous Commission decisions authorizing the transfer of a merchant CPCN to a public utility prior to completion of construction of the project. Further, nothing in [WIS. STAT.] § 196.491 prohibits the transfer of rights granted under a CPCN.

> As a wholesale merchant plant, the Commission's review in this docket was appropriately limited to those statutory criteria applicable to merchants. The fact that a project may be acquired by a public utility at some point in the future does not transform the project into a non-merchant plant, nor does it require that the potential would-be buyers be co-applicants. To the extent that certain intervenors find fault with this framework, their argument is with the Legislature and not with the Commission. As [WIS. STAT.] ch. 196 is currently written, the process by which the applicant seeks a CPCN in this docket is a lawful one, and the Commission may not impose additional

> requirements on the applicant that are not prescribed by the applicable legislation.

(Footnote omitted.) Consistent with this determination, pursuant to WIS. STAT. § 196.491(3)(d)2. and 3., the PSC did not consider whether the project "satisfies the reasonable needs of the public for an adequate supply of electric energy," nor did the PSC consider "alternative sources of supply or engineering or economic factors" in determining whether the design and location or route are in the public interest.

¶21 The appellants contend that the PSC improperly considered the proposed facility to be a wholesale merchant plant under WIS. STAT. § 196.491(1)(w) so as to entitle it to the exemptions in § 196.491(3)(d). The appellants advance a series of arguments in support of this contention; however, as we explain, none of those arguments demonstrate that Koshkonong is not a wholesale merchant plant as defined by § 196.491(1)(w). Thus, the appellants fail to show that the PSC erred in its application of § 196.491(1)(w) and (3)(d).

¶22 The Town argues that Koshkonong, in its CPCN application, "flagged its ultimate intent to never own and operate a wholesale merchant plant." However, this mischaracterizes Koshkonong's CPCN application. The language that the Town identifies (which is in a section regarding the "[a]nnual energy to be delivered under contract or expected to be delivered") states:

> Koshkonong Solar, provided it receives a CPCN from the Commission, would directly or indirectly through its affiliates, construct and operate the Project by selling the power using long term power purchase agreements. Alternatively, Koshkonong Solar would sell or assign the Project, or a portion thereof, to a public utility or other qualified entity at any time before, during or after the Project is constructed….

11

This language does not reflect an "ultimate intent to never own and operate" the project, but rather acknowledges the possibility that Koshkonong might sell or assign the project to a public utility. In a different section titled "Ownership," the application unqualifiedly states, "Koshkonong Solar … is currently the entity anticipated to own and operate the Project."[5] Consistent with this, the PSC granted the CPCN to *Koshkonong*: the PSC's final decision states, "The Commission grants *the applicant* a CPCN for construction of the proposed … facility," and, "*The applicant* is authorized to construct the proposed … facilities."[6] (Emphasis added.) In granting the CPCN, the PSC did not authorize the CPCN's transfer to the Utilities, nor did the PSC authorize the Utilities to construct or operate the facility proposed in Koshkonong's CPCN application. As stated, the Utilities were not parties to the CPCN proceedings, and our review is limited to the PSC's grant of a CPCN to Koshkonong.

¶23 The appellants argue that the proposed facility is not a "wholesale merchant plant" in light of the Utilities' application for a certificate of authority to acquire the project, which was submitted to the PSC approximately 15 days after Koshkonong submitted its CPCN application, and before the PSC had issued a final decision regarding Koshkonong's CPCN application. Specifically, Engelstad

---

[5] Relatedly, Engelstad identifies language in the project's EA (which was submitted after Koshkonong's CPCN application) that states, "The applicant anticipates that Wisconsin utilities would own the solar generation project, since many utilities have publicly expressed the need for solar power and have plans to decommission fossil fuel power plants. On April 30, 2021, [the Utilities] submitted a joint application for a Certificate of Authority to acquire, own, and operate the proposed project." However, as the PSC points out, the EA goes on to say that Koshkonong "also anticipates building the project upon CPCN approval regardless of the approval of [the Utilities' application for a certificate of authority to acquire the project in the acquisition proceedings]." Thus, the language highlighted by Engelstad does not show that the Koshkonong never intended to own or operate the project.

[6] The final decision explicitly states that "applicant" refers to Koshkonong.

12

argues that in order for a CPCN to be issued for the project as a wholesale merchant plant, the project must actually be "owned and operated" by a person "that is not a public utility" for at least some amount of time. However, notwithstanding the intended transfer of Koshkonong's CPCN rights to the Utilities, as stated, the PSC granted the CPCN to Koshkonong, and in granting the CPCN, the PSC did not authorize the transfer of CPCN rights to the Utilities prior to the project's construction or prior to Koshkonong's ownership and operation of the project. It is the PSC's decision to issue a CPCN to Koshkonong that we are reviewing, and the appellants' arguments are thus beyond the scope of our review.[7]

¶24 Engelstad and the Town also argue that, pursuant to WIS. STAT. § 196.491(3)(a)1., it is the person who actually constructs a large electric generating facility who must apply for and receive a CPCN. *See* § 196.491(3)(a)1. ("[N]o person may commence the construction of a facility unless the person has applied for and received a certificate of public convenience and necessity under this subsection."). Here, Engelstad and the Town argue, the Utilities cannot construct the project because they did not apply for and receive a CPCN; Koshkonong did. Relatedly, Engelstad argues that allowing the Utilities to construct the project without requiring the Utilities to obtain their own CPCN for the project "does not conform to the provisions and structure of the CPCN law as

---

[7] We additionally observe that under the appellants' reading of WIS. STAT. § 196.491(3)(d), the PSC would have to determine whether a proposed facility might subsequently be acquired by a public utility (and when), which could be uncertain at the time of application, in order to determine whether to apply § 196.491(3)(d)2. and 3.'s wholesale-merchant-plant exemptions.

13

the legislature designed it."[8] Here again, we do not address these arguments based on the scope of our review in this case. As stated, we are reviewing the PSC's final decision, which grants a CPCN to Koshkonong, and which does not authorize the Utilities to construct the project. The PSC's subsequent final decision authorizing the Utilities to acquire Koshkonong's CPCN and construct the proposed facility is not at issue here, and does not negate that, within the scope of the proceedings that are under review in this case, the proposed facility is a wholesale merchant plant as defined in § 196.491(1)(w).

¶25 In sum, we reject the appellants' arguments and conclude that the PSC properly considered the proposed facility to be a wholesale merchant plant and, therefore, properly applied WIS. STAT. § 196.491(3)(d)'s wholesale-merchant-plant exemptions in granting a CPCN to Koshkonong.

## II. The PSC did not violate WEPA by not preparing an EIS.

¶26 Klopp argues that the PSC violated WEPA by failing to have an EIS prepared. WEPA requires that state agencies contemplating a "major action[]

---

[8] In a separate section of Engelstad's brief, Engelstad argues that allowing the Utilities to acquire the CPCN that Koshkonong obtained for the project deprives the intervenors of their right to a contested case hearing regarding the requirements enumerated in WIS. STAT. § 196.491(3)(d)2. and 3. that do not apply to a CPCN for a wholesale merchant plant. We treat this as a variation of Engelstad's argument that allowing the Utilities to construct the project without requiring the Utilities to obtain their own CPCN for the project "does not conform to the provisions and structure of the CPCN law as the legislature designed it," and we similarly reject it as beyond the scope of this appeal. For the same reason, we also reject a number of additional arguments that Engelstad raises. This includes Engelstad's argument that depriving the intervenors of their right to a contested case hearing regarding those requirements enumerated in § 196.491(3)(d) that do not apply to a CPCN application for a wholesale merchant plant violates equal protection, that the transfer of Koshkonong's CPCN to the Utilities is anticompetitive and violates general state policy, that allowing Koshkonong to obtain the CPCN and then transfer it to the Utilities "improperly eliminated the required Agricultural Impact Statement," and that the transfer of the CPCN from Koshkonong to the Utilities renders Koshkonong's leases with private landowners for the project unconscionable.

significantly affecting the quality of the human environment" prepare an EIS. WIS. STAT. § 1.11(2)(c).[9] "'The purpose of WEPA is to insure that agencies consider environmental impacts during decision making.'" *Clean Wis.*, 282 Wis. 2d 250, ¶188 (quoting *Boehm v. DNR*, 174 Wis. 2d 657, 665, 497 N.W.2d 445 (1993)). "WEPA is procedural in nature and does not control agency decision making. Rather, it requires that agencies consider and evaluate the environmental consequences of alternatives available to them and undertake that consideration in the framework provided by [§] 1.11." *Boehm*, 174 Wis. 2d at 665.

---

[9] WISCONSIN STAT. § 1.11(2)(c) states in full:

> **(2)** All agencies of the state shall:
>
> (c) Include in every recommendation or report on … major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States council on environmental quality under P.L. 91-190, 42 USC 4331, by the responsible official on:
>
> 1. The environmental impact of the proposed action;
>
> 2. Any adverse environmental effects which cannot be avoided should the proposal be implemented;
>
> 3. Alternatives to the proposed action;
>
> 4. The relationship between local short-term uses of the human environment and the maintenance and enhancement of long-term productivity;
>
> 5. Any irreversible and irretrievable commitments of resources that would be involved in the proposed action should it be implemented; and
>
> 6. Such statement shall also contain details of the beneficial aspects of the proposed project, both short term and long term, and the economic advantages and disadvantages of the proposal.

¶27     The "procedures to provide the [PSC] with adequate information on the short-term and long-term environmental effects of its actions, as required by [WEPA]" are set forth in WIS. ADMIN. CODE ch. PSC 4.  Ch. PSC 4 (prefatory note).[10]  The type of environmental analysis required depends on the category of action being proposed.   WISCONSIN ADMIN. CODE § PSC 4.10 differentiates between Type I actions, which "are major actions that significantly affect the quality of the human environment"; Type II actions, which "have the potential to significantly affect the quality of the human environment"; and Type III actions, which "normally do not have the potential to significantly affect the quality of the human environment."   Sec. PSC 4.10(1)-(3).   Type I actions require an EIS, Type II actions require an Environmental Assessment (EA), and Type III actions normally do not require an EIS or an EA.  Sec. PSC 4.10.[11]  WISCONSIN ADMIN. CODE § PSC 4.20(1) describes what an EA is and what it must contain:

---

[10] All references to the WIS. ADMIN. CODE are to the March 2025 register unless otherwise noted.

[11] WISCONSIN ADMIN. CODE § PSC 4.10 states in full:

> **(1)** TYPE I ACTIONS. Type I actions are major actions that significantly affect the quality of the human environment, within the meaning of [WIS. STAT. §] 1.11(2)(c)[.]    The commission shall prepare an EIS on any of the proposed actions involving a request for commission approval, categorized as Type I actions, listed in Table 1.  The commission shall also prepare an EIS for actions not listed in Table 1 that it determines are Type I actions.

> **(2)** TYPE II ACTIONS. Type II actions are proposed actions involving requests for commission approval that have the potential to significantly affect the quality of the human environment, within the meaning of [WIS. STAT. §] 1.11(2)(c)[.] Unless the commission decides an EIS is necessary, the commission shall prepare an EA on any of the proposed actions involving a request for commission approval, categorized as Type II actions, listed in Table 2.

(continued)

> The commission shall prepare an EA as a concise document that provides a factual investigation of the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the proposed action. The EA shall include a recommendation whether the proposed action is a major action significantly affecting the quality of the human environment, within the meaning of [WIS. STAT. §] 1.11(2)(c) … for which an EIS is required.

¶28 Here, the PSC classified the proposed project as a Type III action, which does not normally require an EA or an EIS. *See* WIS. ADMIN. CODE § PSC 4.10(3) tbl. 3. The PSC nonetheless prepared an EA "due to the size and amount of land that would be covered by the proposed project."[12] The EA is approximately 75 pages long and concludes that "approval and construction of this project is unlikely to have a significant impact on the human environment" and that, as a result, "the preparation of an EIS is not required." When reviewing a "negative-EIS decision," we apply a two-part test:

> First, has the agency developed a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the action proposed; second, giving due regard to the agency's expertise where it appears actually to have been applied, does the agency's

---

> **(3)** TYPE III ACTIONS. Type III actions are proposed actions involving requests for commission approval that normally do not have the potential to significantly affect the quality of the human environment, within the meaning of [WIS. STAT. §] 1.11(2)(c)[.] As such, they do not normally require an EA or an EIS. An evaluation of a specific Type III proposal, however, may indicate that the preparation of an EA or EIS is warranted for that proposal. Type III actions are listed in Table 3.

[12] Klopp argues that because the project included an electric energy storage facility, it is actually a Type II action that would normally require an EA. Because the PSC prepared an EA, we do not discuss this argument further.

> determination that the action is not a major action significantly affecting the quality of the human environment follow from the results of the agency's investigation in a manner consistent with the exercise of reasonable judgment by an agency committed to compliance with WEPA's obligations?

*Wisconsin's Env't Decade, Inc. v. PSC*, 79 Wis. 2d 409, 425, 256 N.W.2d 149 (1977). In other words, "[i]f the [agency] developed a reviewable record and its negative-EIS decision is reasonable based on that record, we will uphold its decision." *Applegate-Bader Farm, LLC v. DOR*, 2021 WI 26, ¶17, 396 Wis. 2d 69, 955 N.W.2d 793.

¶29 Although Klopp challenges the PSC's negative-EIS decision for numerous reasons, Klopp does not develop an argument under the relevant legal standard—that is, Klopp does not argue that the PSC failed to develop a reviewable record or that its negative-EIS decision was unreasonable based on the record. *See Applegate-Bader Farm*, 396 Wis. 2d 69, ¶17. As a result, Klopp's arguments may be rejected on that basis. *See Clean Wis.*, 282 Wis. 2d 250, ¶180 n.40 ("We will not address undeveloped arguments."). Nonetheless, we briefly address and reject the arguments that Klopp does advance.

¶30 Klopp first argues that the project, because of its size alone, necessarily required an EIS. However, Klopp because does not develop this argument or support it with any legal authority, and we reject it on that basis. *See id.*; *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

¶31 Relatedly, Klopp argues that the EA that the PSC did prepare was inadequate because it did not "tak[e] strong consideration of the size of the

Project."[13]  To the extent that Klopp means to advance this as a separate argument, it is unavailing.  The size of the project was one of the PSC's reasons for conducting an EA, and the EA did, in fact, take into consideration the size of the project.  In arguing that the size of the project was not given enough weight when determining whether to conduct an EIS, Klopp does not account for the standard of review that we apply to an agency's negative-EIS decision—as stated, we will uphold an agency's negative-EIS decision as long as the agency developed a reviewable record and the decision was reasonable based on that record.  *Applegate-Bader Farm*, 396 Wis. 2d 69, ¶17.  In the absence of a developed argument under the appropriate standard of review, Klopp has failed to show that the PSC's negative-EIS decision was not reasonable based on the record.  *See id.*; *see also Larsen v. Munz Corp.*, 167 Wis. 2d 583, 606-07, 482 N.W.2d 332 (1992) ("Once an agency has made its fully informed and well-considered decision, a reviewing court may not interfere with agency discretion choosing the action to be taken, or as in this case, the decision not to prepare an EIS."); *Town of Holland v. PSC*, 2018 WI App 38, ¶22, 382 Wis. 2d 799, 913 N.W.2d 914 (stating that we defer to the agency as to the weight of the evidence).[14]

---

[13]  Klopp also argues that "[t]he [EA] is compromised[] by not considering the fact that the current version of [WIS. ADMIN. CODE ch.] PSC 4 is from 2011, … long before there were any large solar facilities being proposed in Wisconsin."  However, Klopp cites no authority to support this argument that regulations should be interpreted differently based on their age or on intervening developments since their enactment, and we reject it on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").  Moreover, as Koshkonong argues, the PSC has approved several large solar projects since the current version of ch. PSC 4 was enacted, and presumably could have pursued a rule change if it believed one was warranted.

[14]  At other points in Klopp's briefing, Klopp appears to challenge the weight given by the PSC to other considerations in making its negative-EIS decision.  We reject these challenges for the same reason.

¶32    Klopp also argues that if the project was completed, "none of the activities … that are currently taking place on the [project site] would continue to tak[e] place," and that "[a] project that completely eliminates the current activities[] *must significantly affect the quality of the human environment*" so as to require an EIS.  Here again, Klopp does not otherwise develop this argument with supporting legal authority, and we reject it on that basis.  *See **Clean Wis.**,* 282 Wis. 2d 250, ¶180 n.40; ***Pettit***, 171 Wis. 2d at 646.

¶33    Klopp also challenges the PSC's application of WIS. ADMIN. CODE § PSC 4.20(2)(d).  Consistent with § PSC 4.20(2)(d), the PSC considered ten factors in making its determination as to whether an EIS was required.[15]  Klopp

---

[15] WISCONSIN ADMIN. CODE § PSC 4.20(2)(d) lists the following as factors that must be considered:

> **1.** Effects on geographically important or scarce resources, such as historic or cultural resources, scenic or recreational resources, prime farmland, threatened or endangered species and ecologically important areas.
>
> **2.** Conflicts with federal, state or local plans or policies.
>
> **3.** Significant controversy associated with the proposed action.
>
> **4.** Irreversible environmental effects.
>
> **5.** New environmental effects.
>
> **6.** Unavoidable environmental effects.
>
> **7.** The precedent-setting nature of the proposed action.
>
> **8.** The cumulative effect of the proposed action when combined with other actions and the cumulative effect of repeated actions of the type proposed.
>
> **9.** The foreclosure of future options.
>
> **10.** Direct and indirect environmental effects.

(continued)

argues that the PSC, in considering these factors, "failed to establish that an EIS was not required" because the PSC's conclusions regarding these factors were "contingent upon the [p]roject being temporary and the land being able to return to agricultural use" and because "evidence that the [p]roject would extend beyond the 35-50 year lifespan[] overwhelmingly undermines the assumptions and conclusions in the EA." Klopp argues that, as a result, the PSC did not comply with § PSC 4.20(1), which, as stated, requires that an EA "provides a factual investigation of the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the proposed action." *See also* **Wisconsin's Env't Decade**, 79 Wis. 2d at 425 (stating the same requirement using substantively the same language). We reject these arguments for the following reasons. First, the PSC, in considering § PSC 4.20(2)(d)'s factors, took into account the environmental effects of the project both during the project's operational life and after its decommissioning. For example, the PSC considered the project's "[i]rreversible environmental effects" and the "[f]oreclosure of future options." And, contrary to Klopp's assertions, the PSC did not assume that the project's operational life would necessarily be limited to 35-50 years.[16] As a result, Klopp fails to explain under the relevant standard how the PSC failed to develop an adequate record or

_____

**11.** Other environmental matters the commission considers relevant.

[16] For example, when considering WIS. ADMIN. CODE § PSC 4.20(2)(d)'s factors, the PSC stated, "The construction of the proposed solar generation facility would remove fields from agricultural production or any other use during the operational life of the project, which is proposed to be *at least* 35 years," and that the project area "would be out of agricultural production for the operational life of the project--*potentially* 35 years *or more*." (Emphasis added.)

how its negative-EIS decision was unreasonable based on the record. *See Applegate-Bader Farm*, 396 Wis. 2d 69, ¶17.

¶34 Klopp further argues that the EA is inadequate, and that the PSC's negative-EIS decision made in reliance on the EA is improper, because the EA assumes without proof that proposed mitigation actions would be followed and that decommissioning actions will be completed as proposed. Although Klopp does not identify the relevant language in the EA, we observe that the EA states, "If proposed mitigation actions are followed, the proposed project is not expected to significantly affect historic resources, scenic or recreational resources, threatened or endangered species, or ecologically important areas." Elsewhere, the EA states, "It is expected that at the end of the useful life of the project, with an effective de-commissioning process undertaken, that the land and resources impacted from this project could return to a state similar or the same as it was prior to the construction of the project." Additionally, after stating that the "Commission staff has not identified any potential environmental effects of the proposed project that could be considered significant"—the EA concludes that "[t]his evaluation is arrived at assuming that some, if not all, of the mitigation measures proposed by [Koshkonong] and [PSC] and DNR staff are used."

¶35 In refuting Klopp's argument that an EA is inadequate if it assumes that mitigation actions or other conditions would be required, the PSC relies on *Boehm*. In *Boehm*, our supreme court addressed an argument similar to Klopp's. *Boehm*, 174 Wis. 2d at 673. The *Boehm* court noted that many federal cases "have upheld environmental assessments … that incorporate conditions for approval or mitigation measures." The *Boehm* court concluded, "If the proposal is modified prior to implementation by adding conditions for approval which compensate for any possible adverse environmental impacts stemming from the

original proposal, the statutory threshold of significant environmental effects is not crossed and an EIS is not required." *Id.* at 675-76; *see also id.* at 676 ("We conclude that an agency may control potential adverse environmental consequences through conditions that must be complied with to obtain approval."). Here, the PSC, after concluding that the project would have no undue adverse impacts on the environment, stated: "To the extent there are some environmental impacts, the Commission finds that these impacts can be mitigated by conditions imposed by this Final Decision."[17]  Klopp does not address the PSC's reliance on *Boehm* in her reply brief, and Klopp does not cite any legal authority in her appellant's brief to support her argument that the EA was inadequate because it assumed that at least some of the proposed mitigation measures would be used; accordingly, we reject this argument. *See Pettit*, 171 Wis. 2d at 646; *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).[18]

¶36    Klopp also challenges the PSC's conclusion "that the project will have no undue adverse impacts on the environment and therefore satisfies the CPCN statutory criteria." Klopp argues that this conclusion was made "[w]ith no evidence cited, discussed, or weighed," and that "[t]here is no statement of reasons or discussion of evidence presented or a rationale for why the Commission chose

[17] As an example of one of the conditions imposed, the PSC "require[d] the applicant [to] raise the array fences a minimum of 6 inches off the ground or provide larger openings (roughly 1 foot by 1 foot) at intervals throughout the perimeter fence to allow for small animal movement."

[18] Nor does Klopp argue, either in her appellant's brief or in her reply brief in response to the PSC's reliance on *Boehm v. DNR*, 174 Wis. 2d 657, 497 N.W.2d 445 (1993), that an EIS was required because the PSC's final decision did not impose conditions sufficient to adequately compensate for any possible adverse environmental impacts.

certain evidence over other[] [evidence]." In making this argument, Klopp relies on WIS. STAT. § 227.46(4), which states, "the proposed decision shall contain a statement of the reasons [for the decision] and of each issue of fact or law necessary to the proposed decision." But Klopp's reliance on this statute is misplaced. As the PSC points out, § 227.46(4) only applies when "a majority of the officials of the agency who are to render the final decision have not heard the case or read the record," which was not the situation here.[19] The PSC also points out that agency decisions are otherwise generally governed by WIS. STAT. § 227.47(1), which states, "[E]very final decision of an agency shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence." Sec. 227.47(1); *see also Clean Wis.*, 282 Wis. 2d 250, ¶145 ("There is no requirement that the agency provide an elaborate opinion."); *Hixon v. PSC*, 32 Wis. 2d 608, 627, 146 N.W.2d 577 (1966) (concluding that the PSC's findings, which were "stated in terms of the ultimate factual determinations that were necessary to support the commission's order," were adequate); *Applegate-Bader Farm*, 396 Wis. 2d 69, ¶31 ("We have, on several occasions, concluded that an agency's record was satisfactory despite the record not having the specific information or investigation that the petitioner would have preferred."). In light of this language, and given Klopp's failure to respond to the PSC's argument in her reply brief, we reject Klopp's argument that

---

[19] For the same reason, we reject Klopp's argument that, pursuant to WIS. STAT. § 227.46(4), the PSC was required to serve its proposed decision on the parties. *See* § 227.46(4) ("Notwithstanding any other provision of this section, in any contested case, if a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposed decision is served upon the parties …."). Again, § 227.46(4) does not apply here.

the PSC's conclusion that the project will have no undue adverse impacts on the environment was inadequate. *See **Charolais Breeding Ranches***, 90 Wis. 2d at 108-09.

¶37    Finally, Klopp contends that the EA does not adequately consider whether an EIS was required because it does not include a summary of the public comments that were received, which Klopp argues was required under WIS. ADMIN. CODE § PSC 4.20(2)(f). We disagree that § PSC 4.20(2)(f) requires such a summary. Section PSC 4.20(2)(f) states that an EA must include "[a] list of other persons contacted and [a] summary of comments or other information received from them, including information regarding whether the proposed action complies with the regulations of other governmental units." This language does not refer to "public comments," which are submitted to the PSC, *see* § PSC 4.20(1m), but instead refers to "comments" from "other persons contacted" by the PSC. Therefore, the language of the regulation does not support Klopp's interpretation, and here the EA complied with § PSC 4.20(2)(f) by stating, "No other persons besides staff at DNR and the Commission were contacted or involved in the preparation of this EA."[20]

¶38    In sum, we reject Klopp's arguments and conclude that Klopp has not shown that the PSC failed to develop a reviewable record or that its negative-EIS decision was unreasonable based on the record. *See **Applegate-Bader Farm***, 396 Wis. 2d 69, ¶17.

_____

[20] Moreover, our reasoning on this issue is consistent with what the PSC argues in its response brief. Klopp does not respond to this argument in her reply brief, thereby conceding the issue. ***United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

### III. *The PSC did not violate the Energy Priorities Law.*

¶39     The Energy Priorities Law ("EPL"), WIS. STAT. § 1.12, "states Wisconsin's energy policy and gives agencies and governmental units a list of energy source options and the priority in which they should be considered when making decisions." *Clean Wis.*, 282 Wis. 2d 250, ¶98. Section 1.12(4) states:

> **(4)** PRIORITIES. In meeting energy demands, the policy of the state is that, to the extent cost-effective and technically feasible, options be considered based on the following priorities, in the order listed:
>
> (a) Energy conservation and efficiency.
>
> (b) Noncombustible renewable energy resources.
>
> (c) Combustible renewable energy resources.
>
> ….
>
> (d) Nonrenewable combustible energy resources, in the order listed:
>
> 1. Natural gas.
>
> 2. Oil or coal with a sulphur content of less than 1 percent.
>
> 3. All other carbon-based fuels.
>
> **(5)** Meeting energy demands.
>
> (a) In designing all new and replacement energy projects, a state agency or local governmental unit shall rely to the greatest extent feasible on energy efficiency improvements and renewable energy resources, if the energy efficiency improvements and renewable energy resources are cost-effective and technically feasible and do not have unacceptable environmental impacts.
>
> (b) To the greatest extent cost-effective and technically feasible, a state agency or local governmental unit shall design all new and replacement energy projects following the priorities listed in sub. (4).

¶40  Klopp argues that the PSC violated the EPL when it rejected an alternative proposed by Rob Danielson, a nonparty intervenor in the underlying administrative proceedings.  The Danielson alternative was to invest the cost of the project into the Focus on Energy program, which is a statewide energy efficiency program designed "to help achieve environmentally sound and adequate energy supplies at reasonable cost."  WIS. STAT. § 196.374(2)(a)2.; *see also* § 196.374(2)(a)1. ("The energy utilities in this state shall collectively establish and fund statewide energy efficiency and renewable resource programs…. The [PSC] shall require each energy utility … to fund statewide energy efficiency and renewable resource programs.").

¶41  The PSC explicitly considered the EPL and the Danielson alternative when it approved the CPCN.  The PSC first stated that because the CPCN was for a merchant plant, pursuant to WIS. STAT. § 196.491(3)(d)2. and 3., the PSC would not consider whether the plant would satisfy the reasonable needs of the public for an adequate supply of electric energy or alternative sources of supply, engineering, or other economic factors.  The PSC further concluded that the Danielson alternative was not a technically feasible alternative because the PSC does not regulate carbon dioxide emission rates, cannot compel customers to participate in energy efficiency programs, and does not control the amount of funding available for the Focus on Energy program, which is determined by the legislature.[21]

---

[21] The PSC specifically stated:

> The proposed project will be a new solar electric generation facility.  As such, it is a "noncombustible renewable energy resource" and is entitled to the highest priority of all energy generation resources under the EPL. Parties in this proceeding presented testimony stating that energy conservation and efficiency "deliver superior

(continued)

27

¶42 Based on the foregoing, we reject Klopp's argument that the Danielson alternative was "dismissed … out of hand." Relatedly, Klopp argues that there was not "substantial evidence" to support the PSC's rejection of the

> monetary, energy, capacity, and $CO_2$ reduction benefits." The applicant presented testimony in which it stated that "no EPL alternatives exist that are cost-effective, technically feasible, and environmentally sound alternatives to the proposed project." Further, the applicant stated that it "is not technically feasible" for them to offer an energy efficiency program as an alternative to the proposed project.
>
> The Commission finds the parties' testimony that energy conservation and efficiency "deliver superior monetary, energy, capacity and $CO_2$ reduction benefits" unpersuasive because it was not based on area[-]specific studies of the technical feasibility of demand response and energy efficiency programs as alternatives to the project. Certain parties also argued for the benefits of efficiency programs and the reduction in $CO_2$ emissions. However, the Commission does not regulate $CO_2$ emission rates, cannot compel customers to participate in energy efficiency and demand response programs as those are voluntary, and does not control the amount of available funding for the statewide energy efficiency program (Focus on Energy) as that is established by the Legislature.
>
> The Commission concludes that energy and capacity from the proposed project cannot be replaced by energy conservation and efficiency, the highest priority alternative. The EA for the proposed project concluded that "approval and construction of this project is unlikely to have a significant impact on the human environment." Additionally, the objective of the law is to deploy environmentally preferable options first when meeting Wisconsin's energy needs, not to require that measures such as conservation or energy efficiency displace a project if not obviously technically feasible or more cost effective. This project aligns with that objective. Therefore, the Commission finds that the proposed project satisfies the requirements of the EPL.

(Footnote and citation omitted.)

Danielson alternative because the PSC did not provide a citation to the record when it concluded that the Danielson alternative was not technically feasible. However, the requirement that an agency's decision must be supported by substantial evidence is not the same as a requirement that the agency provide a citation to that evidence, and Klopp's interpretation of the law is inconsistent with the relevant standard of review. *See, e.g.*, **Tatum v. LIRC**, 132 Wis. 2d 411, 417, 392 N.W.2d 840 (Ct. App. 1986) ("We must search the record to locate substantial evidence supporting the agency's decision."). Additionally, as Koshkonong argues, the PSC received testimony from Daniel Litchfield, the Vice President of Renewable Development for the LLC of which Koshkonong is a subsidiary, stating that "cost effective and technically feasible energy conservation and efficiency options do not exist as a substitute for the Koshkonong Solar Project." Although Klopp challenges the PSC's reliance on this testimony, we will not "substitute [our] judgment for that of the agency as to the weight of the evidence." WIS. STAT. § 227.57(6).

¶43 Finally, Klopp argues that the Commission's rejection of the Danielson alternative shows that the PSC did not, as required by WIS. STAT. § 1.12(2), "investigate and consider the maximum conservation of energy resources as an important factor." Because we disagree with Klopp's assertion that the PSC failed to consider the Danielson alternative, we reject this argument.

> *IV. The circuit court did not err by failing to take judicial notice of documents from the acquisition proceedings.*

¶44 The Town argues that the circuit court erred by not taking judicial notice of documents from the acquisition proceedings. Specifically, the Town argues that the court was required to take judicial notice of the documents pursuant to WIS. STAT. § 902.01, which is titled "Judicial notice of adjudicative

facts." Section 902.01(2) states that "[a] judicially noticed fact must be one not subject to reasonable dispute" and includes "[a] fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pursuant to § 902.01(4), "[a] judge or court shall take judicial notice if requested by a party and supplied with the necessary information." Under these provisions, the Town argues that the court was required to take judicial notice of the documents, and that the court erred when it failed to do so.

¶45 However, as Koshkonong and the PSC argue, the circuit court did, as stated in a written order, "take[] judicial notice that the documents presented to the Court by Petitioner Town of Christiana reside in Commission docket 5-BS-258." To the extent that the Town means to argue that the court should have taken judicial notice of particular facts contained in or evident from these documents, the Town does not state which facts it wished to have considered or otherwise develop its argument on appeal. Moreover, Koshkonong argues that the Town also failed to make this argument before the circuit court in that the Town did not identify specific information from the documents of which the Town was requesting the circuit court take judicial notice. From our review of the record, this appears to be true—we do not discern any specific information that the Town sought to have the court take judicial notice of—and the Town does not respond to Koshkonong's argument in its reply brief, thereby conceding the issue.[22] We accordingly reject the Town's argument without addressing it further. *See Clean Wis.*, 282 Wis. 2d 250, ¶180 n.40; *Charolais Breeding Ranches*, 90 Wis. 2d at

---

[22] We further observe that the Town does not explain why the circuit court's failure to take judicial notice of documents from the acquisition proceedings would entitle it to relief on appeal given that we are reviewing the PSC's decision. *See Sierra Club v. PSC*, 2024 WI App 52, ¶10, 413 Wis. 2d 616, 12 N.W.3d 854.

108-09 (unrefuted arguments are deemed conceded); ***Schill v. Wisconsin Rapids Sch. Dist.***, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues).

### V. Engelstad has not shown that the PSC was biased.

¶46     Englestad argues that the fact that the PSC opened the docket for the acquisition proceedings while the CPCN proceedings were pending, and before any factfinding in the CPCN docket had occurred, "suggests an impermissible bias in the PSC." We reject this argument.

¶47     "Due process applies to proceedings before administrative entities." ***County of Dane v. PSC***, 2022 WI 61, ¶42, 403 Wis. 2d 306, 976 N.W.2d 790. A party's due process rights in an administrative proceeding are violated if the party can show a "great risk of actual bias" on the part of an administrative adjudicator. *See* ***State v. Herrmann***, 2015 WI 84, ¶40, 364 Wis. 2d 336, 867 N.W.2d 772 (quoting ***State v. Gudgeon***, 2006 WI App 143, ¶23, 295 Wis. 2d 189, 720 N.W.2d 114). "[A]dministrative decision-makers are entitled to [a] presumption of 'honesty and integrity' when serving as adjudicators." ***County of Dane v. PSC***, 403 Wis. 2d 306, ¶45 (quoting ***Withrow v. Larkin***, 421 U.S. 35, 47 (1975)). However, this presumption may be overcome when the party alleging a serious risk of actual bias shows that "a reasonable person—taking into consideration human psychological tendencies and weaknesses—concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." ***Gudgeon***, 295 Wis. 2d 189, ¶24. It is rare that a party can meet this burden: only "the exceptional case with 'extreme facts' [will] rise[] to the level of a 'serious risk of actual bias.'" ***Miller v. Carroll***, 2020 WI 56, ¶24, 392

Wis. 2d 49, (quoting ***Caperton v. A.T. Massey Coal Co., Inc.***, 556 U.S. 868, 886-87 (2009)).

¶48    Here, Englestad argues that the simultaneous pendency of the CPCN and acquisition proceedings suggests an impermissible bias.    Specifically, Engelstad argues that opening the acquisition docket regarding the transfer of a CPCN that did not yet exist "only makes sense if the PSC anticipated [that] the CPCN would come into existence."    However, Engelstad does not support this argument with relevant legal authority, and we disagree that, under the circumstances here, the mere opening of the acquisition proceedings necessarily reflects a predetermined decision that the CPCN would be granted.    Moreover, it was not until approximately one year after the PSC's final decision in the CPCN proceedings that the PSC issued its final decision in the acquisition proceedings. This is not an "exceptional case with 'extreme facts,'" ***Miller***, 392 Wis. 2d 49, ¶24, and Englestad fails to show that the simultaneous pendency of the CPCN and acquisition proceedings is the sort of practice that must be forbidden in order to adequately protect due process.[23]

---

[23] Engelstad also asserts, "It appears that the PSC is more properly viewed as 'captured' by the industry it is supposed to be regulating in the public interest."    Although Engelstad then provides a definition of "regulatory capture," Englestad does not otherwise develop this assertion, and we do not address it further.    *See **Clean Wis., Inc. v. PSC***, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768.

Separately, appellants raise two other arguments that we do not address because the appellants concede that they were forfeited.    Specifically, the Town argues that the circuit court erred when it did not reverse the PSC's decision to grant a protective order regarding discovery related to certain communications between Koshkonong and the Utilities.    However, as Koshkonong points out, the Town never moved the circuit court to overturn the PSC's protective order.    The Town does not state—either in its appellant's brief or in its reply brief in response to Koshkonong's argument—that it ever raised this issue in the circuit court, and we see nothing in the record showing that it did.    We therefore reject the Town's argument as forfeited.    *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979); ***Schill v. Wisconsin Rapids Sch. Dist.***, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d
(continued)

## CONCLUSION

¶49    For the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

572, 786 N.W.2d 177.    Similarly, Klopp argues that the PSC violated WIS. STAT. § 196.491(3)(d)(6) "by ignoring affected town and village planning."    However, the PSC and Koshkonong argue that Klopp forfeited this argument by failing to raise it before the circuit court. In her reply brief, Klopp does not respond to the PSC's and Koshkonong's argument—for example, she does not identify any point at which she made this argument before the circuit court—and we see nothing in the record showing that she did.    Although we review the PSC's decision and not the court's, the reasons for the forfeiture rule—including not blindsiding the court or opposing parties and saving judicial resources by providing an opportunity for an issue to be resolved without an appeal—still pertain. *See Townsend v. Massey*, 2011 WI App 160, ¶¶25-26, 338 Wis. 2d 114, 808 N.W.2d 155.    Accordingly, we deem this argument forfeited and do not address it. *See Charolais Breeding Ranches*, 90 Wis. 2d at 108-09; *Schill*, 327 Wis. 2d 572, ¶45 & n.21.

Finally, to the extent we have not addressed any additional arguments that any of the appellants may mean to make, we reject them because the arguments are undeveloped, *see Clean Wisconsin*, 282 Wis. 2d 250, ¶180 n.40, the arguments are unsupported by references to legal authority, *see Pettit*, 171 Wis. 2d at 646, or we have decided the appeal on other dispositive grounds, *see Barrows v. American Family Insurance Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013).