**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 2, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2630**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV186**

IN COURT OF APPEALS
DISTRICT I

---

JERRY FRIEDMAN, JOANNE FRIEDMAN, JOE KOENIG, DEB KOENIG, CHRIS KESTELL AND JENNIFER KESTELL,

PETITIONERS-APPELLANTS,

JACK WOODLAND AND KATHLEEN PEARCE,

PETITIONERS,

V.

PUBLIC SERVICE COMMISSION OF WISCONSIN,

RESPONDENT-RESPONDENT,

CITY OF PLYMOUTH,

INTERVENOR-RESPONDENT.

---

APPEAL from an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jerry and JoAnne Friedman, Joe and Deb Koenig, and Chris and Jennifer Kestell (collectively, "the Neighbors") appeal from an order of the circuit court denying their petition for judicial review of a decision by the Public Service Commission of Wisconsin ("PSC"). In its decision, the PSC granted a certificate of authority to Plymouth Utilities to construct and place into service a new electrical distribution substation in the Town of Mitchell (the "Substation Project"). In a separate proceeding before the PSC, a different company, American Transmission Company LLC ("ATC"), applied for a Certificate of Convenience and Necessity for a transmission line that would connect the Substation Project to a larger, regional transmission system (the "Transmission Line Project"). The transmission line route preferred by ATC would cross through each of the Neighbors' properties.

¶2 It is undisputed that the Neighbors were not injured by the actual work contemplated by the Substation Project. Instead, the Neighbors argue that they were injured by the PSC's decision to segment[1] the Substation and Transmission Line Projects. They claim that by selecting the location of the substation first without considering the impact of the transmission line, the routes

---

[1] As described in the federal context, "segmenting" a project "allows an agency to avoid the [National Environmental Policy Act] requirement that an [environmental impact statement] be prepared for all major federal action with significant environmental impacts by segmenting an overall plan into smaller parts involving action with less significant environmental effects." *City of W. Chicago, Ill. v. United States Nuclear Regul. Comm'n*, 701 F.2d 632, 650 (7th Cir. 1983).

available for the transmission line were "severely limited." Had the two projects been considered together, the Neighbors would have received notice of the Substation Project, and an alternative location for the substation might have been chosen with different potential routes for the Transmission Line Project that would not have impacted their properties.

¶3    We conclude that the Neighbors lack standing to seek review of the PSC's decision approving the Substation Project. The Neighbors' petition fails to allege that their injuries are the direct result of the PSC's consideration of the two projects separately rather than together. Accordingly, we affirm the circuit court's order.

BACKGROUND

¶4    In August 2023, Plymouth Utilities, a municipally owned public utility, submitted an application to the PSC for approval of the Substation Project in the Town of Mitchell. In October 2023, the PSC opened a docket to consider the Substation Project application. In response to complaints from local landowners near the original proposed site for the substation, Plymouth Utilities submitted an application for a new site, still located in the Town of Mitchell. No hearing was requested or held, and no comments were received on the revised Substation Project application.

¶5    ATC separately submitted an application for the Transmission Line Project to connect to the Substation Project to a larger, regional transmission system. The Transmission Line Project was considered by the PSC in a separate docket.

¶6      The Neighbors do not reside in the Town of Mitchell where the Substation Project was approved.  Instead, they reside in the Town of Lyndon, and ATC's preferred transmission line route for the Transmission Line Project runs through the Neighbors' properties.  Residents of the Town of Lyndon did not receive notice and were not aware of the proposed Substation Project.

¶7      In February 2024, some residents of the Town of Lyndon received letters from the Wisconsin Department of Agriculture, Trade, and Consumer Protection with a questionnaire about potential agricultural impacts of the Transmission Line Project that would run through the Neighbors' properties.  In March 2024, the PSC issued its final decision approving the Substation Project application.

¶8      According to the Neighbors, because the Transmission Line Project was being considered on a separate docket, the decision on the Substation Project did not consider the impact of the Transmission Line Project on Town of Lyndon residents.  Additionally, because the location of the Substation Project was approved before the Transmission Line Project was considered, the route of the Transmission Line Project was limited.  The Neighbors submitted a Request to Intervene and a Request to Rehear or Reopen the PSC docket for the Substation Project, but because the PSC did not act on those requests within 30 days, they were deemed denied.

¶9      In April 2024, the Neighbors filed the present lawsuit seeking judicial review of the PSC's decision to grant a certificate of authority for the Substation Project.  The Neighbors alleged that they were harmed by the PSC's decision to consider the Substation Project separate from the Transmission Line Project because if the two projects had been considered together, the Neighbors

could have influenced the location of or need for the substation and transmission line. The Neighbors asserted that the preferred route proposed in the Transmission Line Project will cause significant harm to the use and enjoyment of their properties and surrounding lands by threatening plant and wildlife populations. The Neighbors also allege that because the two projects were considered separately, the PSC failed to consider the combined environmental impact of the two projects in violation of the Wisconsin Environmental Policy Act ("WEPA").[2]

¶10     In November 2024, the circuit court delivered its ruling. In the ruling, the circuit court reviewed and discussed the evidence in the record that supported consideration of the Substation Project separate from the Transmission Line Project, ultimately concluding that there was a rational basis to review the two projects separately. It stated that the Neighbors' allegation that the two projects considered together would have required an environmental impact statement was "purely speculative." Moreover, the court held that the Neighbors have "not alleged any harm related to the substation in isolation" and therefore, the Neighbors "do[] not have standing to contest the approval of the substation."

¶11     The Neighbors appeal.

---

[2] Pursuant to WEPA, environmental assessments or environmental impact statements are not "normally require[d]" in projects such as the Substation Project, which is classed as a Type III project. WIS. ADMIN. CODE § PSC 4.10(3) (through Nov. 2024). The Transmission Line Project is classed as a Type II project, which does require an environmental assessment in order to obtain approval. WIS. ADMIN. CODE § PSC 4.10(2) (through Nov. 2024). Because one project requires an environmental assessment and the other does not, the Neighbors argue that considering the projects separately subjected the projects as a whole to less scrutiny.

**DISCUSSION**

¶12   The Neighbors appeal from the order of the circuit court reviewing a decision of the PSC, an administrative agency. "When an appeal is taken from a circuit court order reviewing an agency decision, we review the decision of the agency, not the circuit court." *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166. Judicial review of an agency decision is governed by WIS. STAT. § 227.57 (2023-24),[3] and the scope of our review is the same as that of the circuit court. *Town of Holland v. PSC*, 2018 WI App 38, ¶21, 382 Wis. 2d 799, 913 N.W.2d 914.

¶13   Both the PSC and the City of Plymouth challenge the Neighbors' standing to seek judicial review of the PSC's decision to grant a certificate of authority for the Substation Project. Whether a party has standing to seek judicial review of an agency decision is a question of law that we review independently. *Friends of the Black River Forest v. Kohler Co.*, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342.

**I.   The Neighbors do not have standing.**

¶14   As a threshold matter, we must determine whether the Neighbors have standing to seek judicial review of the PSC's decision to approve the Substation Project. WISCONSIN STAT. §§ 227.52 and 227.53 govern the issue of standing in this case. *See Friends of the Black River Forest*, 402 Wis. 2d 587, ¶20. In short, the two provisions provide that any person aggrieved by an administrative decision (i.e., any person whose substantial interests are adversely

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

affected by an administrative decision) shall be entitled to judicial review of the decision. *See id.* (quoting §§ 227.52 and 227.53(1)); *see also* WIS. STAT. § 227.01(9) (defining "person aggrieved"). "We construe the law of standing liberally, and even an injury to a trifling interest may suffice." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶19 (citation modified).

¶15 To determine whether a petitioner has standing under WIS. STAT. ch. 227, courts apply a two-step test. *Friends of Blue Mound State Park v. DNR*, 2023 WI App 38, ¶25, 408 Wis. 2d 763, 993 N.W.2d 788. In the first step, courts ask "whether the decision of the agency directly causes injury to the interest of the petitioner[.]" *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶18 (citation omitted). This step sometimes refers to whether the petitioner has alleged an "injury in fact." *Id.*, ¶21.

¶16 The alleged injuries must be "'a direct result of the agency action'" and may include injury to "'aesthetic, conservational, recreational, health and safety interests[.]'" *Id.*, ¶¶21-22 (citation omitted). "While injury can be remote in time or occur as the end result of a sequence of events set in motion by agency action, … the events themselves cannot be conjectural or hypothetical." *Town of Delavan v. City of Delavan*, 160 Wis. 2d 403, 413, 466 N.W.2d 227 (Ct. App. 1991); *see also Friends of the Black River Forest*, 402 Wis. 2d 587, ¶21 (explaining that a petitioner's injuries "must be neither hypothetical nor conjectural").

¶17 In the second step, courts ask "whether the interest asserted is recognized by law." *Friends of Blue Mound State Park*, 408 Wis. 2d 763, ¶25 (citation modified). This step requires that the alleged injury is "to an interest which the law recognizes or seeks to regulate or protect." *Friends of the Black*

*River Forest*, 402 Wis. 2d 587, ¶28 (citation omitted). Wisconsin courts have "consistently recognized broad environmental interests under WEPA for standing purposes." *Id.*, ¶26 n.10.

¶18 Turning to the present case, it is undisputed that the Neighbors were not injured by the Substation Project itself. Their properties are not located near the substation, and their petition describes complaints stemming entirely from the effects of the Transmission Line Project. Instead, the Neighbors argue that they were injured by the PSC's decision to segment the Substation and Transmission Line Projects. They claim that by Plymouth Utilities selecting the location of the substation first without considering the impact of ATC's Transmission Line Project, the routes available for the transmission line were "severely limited." Had the two projects been considered together, the Neighbors would have received notice of the Substation Project, and an alternative location for the substation might have been chosen with different potential routes for the Transmission Line Project that would not have impacted their properties.

¶19 Even construing the concept of standing liberally, the Neighbors have not alleged an injury directly resulting from the segmentation of the projects. Instead, they alleged a hypothetical, future injury that might occur if a particular route for the Transmission Line Project is chosen. Importantly, the Neighbors are not alleging an injury that is temporally removed but directly results from the PSC's decision to approve the Substation Project. The Neighbors' argument is based on the false premise that the Substation Project *must* include the Transmission Line Project in order to have any utility whatsoever, and the location of the substation sets in stone the route of the transmission line should a

8

transmission line be approved and constructed at all.[4] The causal relationship between the agency action and the alleged injuries "must be neither hypothetical nor conjectural." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶21.

¶20 In other cases, a direct line can be drawn from an agency action to the alleged injuries, even when those injuries are remote in time or when the injuries will only occur as an end result of a sequence of events set in motion by the agency action. For example, in *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 387 N.W.2d 245 (1986), the petitioner sought judicial review of a decision allowing the construction of a prison near its baseball stadium. The alleged injuries included, among other things, increased traffic congestion around the stadium as a result of the construction of the prison. *Id.* at 69-70. The supreme court held that the increased traffic congestion that would arise as a result of the construction of the prison was sufficient to confer standing on the petitioner.

---

[4] As stated in the Substation Project Application and as described in the PSC's decision approving that application, the substation does not lack utility independent of the transmission line. That is, regardless of whether the Transmission Line Project is approved, and assuming that the substation is never connected to the regional transmission system as contemplated by the Transmission Line Project, the substation continues to function. For example, the substation will have multiple circuit reclosers or breakers that will allow the substation to accommodate four 12.47 kilovolt circuits. The Substation Project will also involve rebuilding and segmenting an existing distribution circuit into two new circuits. This will allow existing customers to be "served from multiple directions" and also will locate additional reclosing devices closer to customers. This additional distribution feeder work will allow Plymouth Utilities to isolate faults and redirect power in the southwestern portion of its service territory, even without the transmission line.

The Substation Project Application and the PSC decision go into greater technical detail, but it suffices to say that "freestanding distribution substations" both exist and provide utility by adding redundancy and interconnection that limit the severity of a potential outage and allow customers to receive electricity from multiple directions. Although courts "accord no deference to the agency's interpretation of law," WIS. STAT. § 227.57(11), "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved," § 227.57(10).

*Id.* Even though the increased traffic was remote in time from the agency action of approving construction of the prison, a direct causal line can be drawn between the agency action and the petitioner's alleged injuries. No conjecture is required to connect future traffic congestion with the construction of the prison, and the future traffic congestion was not a hypothetical result of the agency's action to approve the prison.

¶21     The Neighbors cite *Applegate-Bader Farm, LLC v. DOR*, 2021 WI 26, 396 Wis. 2d 69, 955 N.W.2d 793, in support of their standing argument, but that case also involved a clear and direct line between the agency action and the alleged injury. The petitioner in *Applegate-Bader Farm* operated a farm in southeastern Wisconsin on approximately 11,000 acres of land, and about 2,000 acres of that land was enrolled in a federal Wetland Reserve Easement through the Agricultural Conservation Easement Program and could not be used for agricultural purposes. *Id.*, ¶4. The Department of Revenue revised certain rules related to the classification of agricultural land, and the case arose out of the effect of those revisions on landowners like the petitioners who owned land subject to certain conservation easements. *Id.*, ¶¶4-9.

¶22     The only claim before the supreme court on appeal was the petitioner's claim under WEPA alleging injury to its conservational interests. *Id.*, ¶¶10, 17 n.7. The petitioner alleged that excluding wetlands subject to federal agricultural conservations easements from the definition of "agricultural use" causes the destruction, degradation, and loss of those wetlands. *Id.*, ¶11. The petitioner alleged that the Department of Revenue failed to consider evidence from the Department of Natural Resources that their revisions would cause farmers to destroy sensitive wetlands and would discourage property owners from enrolling their wetlands in the federal program. *Id.* Our supreme court was required to take

these factual allegations as true, and taken as true, there was a direct causal relationship between the Department of Revenue's revisions to the definition of "agricultural use" and the injury to the petitioner's conservational interests. *Id.*, ¶17 n. 7. Unlike *Applegate-Bader Farm*, there are no factual allegations in the Neighbors' petition that, taken as true, establish a direct causal relationship between the PSC's actions and the Neighbors' alleged injuries, nor is there any evidence in the record that supports such a relationship.

¶23 The Neighbors also allege injury to their aesthetic and conservational interests. They argue that considering the two projects separately violated WEPA because it allowed the Substation Project to avoid being included in the environmental assessment that was conducted for the Transmission Line Project, and the PSC did not consider the combined impacts of both projects. This argument, however, addresses the second prong of the standing inquiry (i.e., whether the asserted interest is recognized by law), and does not address the problems with the first prong (i.e., whether considering the projects separately directly resulted in injury to those recognized interests). *See Friends of Blue Mound State Park*, 408 Wis. 2d 763, ¶¶27-28.

¶24 In other words, the problem is not that the Neighbors lack legally recognized interests that were affected by the Transmission Line Project. Rather, the problem is that the petition does not allege a direct causal relationship between the PSC's approval of the Substation Project and their alleged injuries. The approval of a transmission line route that runs through the Neighbors' properties is not the direct result of the approval of the substation location, nor is it the end result of a series of events set in motion by the decision to consider the Substation Project separately from the Transmission Line Project. The alleged connection between the agency action and the injury to the Neighbors' interests is simply too

11

hypothetical and conjectural to establish an "injury in fact." *Friends of the Black River Forest*, 402 Wis. 2d 587, ¶21; *see also* *Town of Delavan*, 160 Wis. 2d at 412-13 (concluding that certain alleged injuries were too "hypothetical and conjectural" to confer standing "because they assume successful annexation" of the town that "may never happen").

¶25    Finally, the Neighbors argue that four of them will be injured as ratepayers of Plymouth Utilities because they "will inevitably face rate increases resulting from the construction of the substation." The Neighbors assert that "[r]atepayer standing as applied here is analogous to taxpayer standing[.]" The Neighbors, however, cite no authority for the proposition that we may extend the concept of taxpayer standing to ratepayers of a public utility, and provide no legal reasoning to support our doing so. We do not consider undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶26    Having concluded that the Neighbors lack standing, we do not reach the merits of their claim regarding impermissible segmentation of the two projects, nor do we discuss the contested issue of whether it would be proper under the circumstances of this case to take judicial notice of certain records filed in the Transmission Line Project docket.

## CONCLUSION

¶27    The Neighbors failed to allege that their injuries were a direct result of the PSC's decision to consider the Substation and Transmission Line Projects separately. Accordingly, we conclude that the Neighbors lack standing to seek judicial review of the PSC's decision to grant a certificate of authority for the Substation Project.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.